1

2

3

4

5

6

7

**F I L E D**
CLERK, U.S. DISTRICT COURT

3/26/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: ___ asi ___ DEPUTY

8        UNITED STATES DISTRICT COURT

9      FOR THE CENTRAL DISTRICT OF CALIFORNIA

10          October 2024 Grand Jury

| | |
|---|---|
| 11  UNITED STATES OF AMERICA, | CR No. 2:25-cr-00211-WLH |
| 12          Plaintiff, | I N D I C T M E N T |
| 13          v. | [18 U.S.C. § 1962(d): Racketeer Influenced and Corrupt Organizations Conspiracy; 18 U.S.C. § 1951(a): Conspiracy to Interfere with Commerce by Robbery and Extortion, Interference with Commerce by Robbery and Extortion, and Attempted Interference with Commerce by Extortion; 18 U.S.C. § 2421(a): Transportation of an Individual in Interstate Commerce with Intent that the Individual Engage in Prostitution; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 666(a)(1)(A): Embezzlement, Conversion, and Intentional Misapplication of Funds from Organization Receiving Federal Funds; 18 U.S.C. § 1344(1): Bank Fraud; 26 U.S.C. § 7201: Attempt to Evade and Defeat the Assessment and Payment of Income Tax; 26 U.S.C. § 7203: Willful Failure to File a Tax Return; 18 U.S.C. §§ 924, 981(a)(1)(C), 982, and 1963, 26 U.S.C. § 7301, and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| 14  EUGENE HENLEY, JR.,<br>     aka "Big U,"<br>     aka "Unc,"<br>     aka "Draws,"<br>     aka "Hannibal,"<br>     aka "Hannibal Muhammad,"<br>     aka "Anybody Killa,"<br>     aka "Dave Austin,"<br>SYLVESTER ROBINSON,<br>     aka "Vey,"<br>MARK MARTIN,<br>     aka "Bear Claw,"<br>TERMAINE ASHLEY WILLIAMS,<br>     aka "Luce Cannon,"<br>ARMANI AFLLEJE,<br>     aka "Mani,"<br>FREDRICK BLANTON, JR., and<br>TIFFANY SHANRIKA HINES,<br><br>          Defendants. | |

27

28          The Grand Jury charges:

1                          GENERAL ALLEGATIONS

2          At times relevant to this Indictment:

3          1.   Defendant EUGENE HENLEY, JR., also known as ("aka") "Big

4    U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad,"

5    aka "Anybody Killa," aka "Dave Austin," was a self-admitted member

6    and "original gangster" or "OG" of the Rollin' 60s Neighborhood Crips

7    (the "Rollin' 60s"), a violent street gang founded and operating in

8    Los Angeles, California.

9          2.   Defendant SYLVESTER ROBINSON, aka "Vey," was a criminal

10   partner of defendant HENLEY.  Defendant ROBINSON was a years-long

11   associate and confidant of defendant HENLEY and served as his

12   righthand man, underboss, and enforcer.

13         3.   Defendant MARK MARTIN, aka "Bear Claw," was a criminal

14   partner of defendant HENLEY and also a self-admitted member of the

15   Rollin' 60s.  Defendant MARTIN was a close confidant and trusted

16   lieutenant of defendant HENLEY.  Defendant MARTIN also owned and

17   operated "Under the Hood Muscle Cars," located at 1613 West 134th

18   Street, Gardena, California.

19         4.   Defendants HENLEY and MARTIN co-founded Uneek Music

20   Entertainment, Inc. ("Uneek Music"), an independent record label.

21   Defendant HENLEY was the Chief Executive Officer and defendant MARTIN

22   was the Chief Financial Officer of the Ex-Offender Fellowship

23   Network, a purported California-registered charitable organization

24   under 26 U.S.C. § 501(c)(3), which did business as "Developing

25   Options," and was also sometimes referred to as "Uneek Ballers,"

26   "Crenshaw Rams Football," "Crenshaw Youth Football and Cheer," and

27   "Crenshaw Ballers" (hereinafter referred to as "Developing Options").

28   Defendant ROBINSON was on the Developing Options employee payroll.

Defendant HENLEY also was the sole proprietor and owner of a related company, "Celebrity Socks," which did business as "Uneek Socks."

5.    Developing Options' purported objective was to be a service and charitable organization providing alternative choices to gang violence, narcotics offenses, and other criminal activity for South Los Angeles youth.  Developing Options, as depicted in the below image, claimed to devote resources to inner-city athletic organizations, such as the Crenshaw Rams.



6.    The City of Los Angeles, a unit of local government in Los Angeles County, within the Central District of California, awarded Developing Options an annual $550,000 grant, which was federally funded, as part of the City of Los Angeles Gang Reduction Youth Development ("GRYD") program.  From on or about July 1, 2018, to on or about June 30, 2023, Developing Options was allotted $2,352,000 from the Mayor's Office of the City of Los Angeles.  Defendant HENLEY's duties and responsibilities as the Chief Executive Officer of Developing Options included ensuring that Developing Options remained in compliance with its contract with the City of Los Angeles

and the Mayor's Office, which included providing a budget, hiring and
compensation of employees, complying with general reporting
requirements of the contract, and otherwise serving as the leader of
Developing Options.  Defendant HENLEY's responsibilities also
included ensuring Developing Options' compliance with the mandatory
GRYD handbook, as set forth in its contract.  Those requirements
included, but were not limited to, submitting all employees for
background checks in order to work under the GRYD contract,
certifying Developing Options' employee training with the Los Angeles
Violence Intervention Training Academy and Member Action Resources
Center, and general compliance with the requirements outlined in the
GRYD handbook.  As Chief Financial Officer, defendant MARTIN shared
with defendant HENLEY the responsibility of ensuring Developing
Options' compliance with the GRYD handbook.

COUNT ONE

[18 U.S.C. § 1962(d)]

[DEFENDANTS HENLEY, ROBINSON, AND MARTIN]

A.   THE RACKETEERING ENTERPRISE

At all times relevant to this Indictment:

8.   Defendants EUGENE HENLEY, JR., also known as ("aka") "Big U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave Austin," SYLVESTER ROBINSON, aka "Vey," and MARK MARTIN, aka "Bear Claw," and others known and unknown to the Grand Jury, were members and associates of a criminal organization that engaged in, among other things, acts of violence, fraud, and other crimes, including murder, robbery, extortion, human trafficking, and embezzlement.  This organization, referred to hereinafter as the "Big U Enterprise," operated within the Central District of California and elsewhere.

9.   The Big U Enterprise, including its leaders, members, and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce.  The Big U Enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for the common purpose of achieving the objectives of the Big U Enterprise.

B.   PURPOSES OF THE ENTERPRISE

10.   The purposes of the Big U Enterprise included, but were not limited to, the following:

a.   Enriching Big U Enterprise members and associates by using the power and status of the Big U Enterprise and defendant

HENLEY and his reputation as an "original gangster" of the Rollin'
60s to commit extortion, robbery, fraud, and other crimes;

b.    Promoting, protecting, and expanding the power,
reputation, and profits of the Big U Enterprise and its members and
associates through the use of intimidation, fear, violence, threats
of violence, assaults, extortion, and murder;

c.    Using social media platforms, documentaries, podcasts,
interviews, and defendant HENLEY's reputation and status to create
fame for, and stoke fear of, the Big U Enterprise and its members and
associates;

d.    Financially enriching Big U Enterprise members and
associates by defrauding donors to nonprofit entities under the
control of the Big U Enterprise and its members and associates,
including Developing Options;

e.    Financially enriching Big U Enterprise members and
associates by defrauding federal, state, and local agencies that
awarded grants and other financial support to nonprofit entities
under the control of the Big U Enterprise and its members and
associates, including Developing Options;

f.    Financially enriching Big U Enterprise members and
associates by defrauding federal agencies and mortgage lending
businesses to make loans to employees of entities under the control
of the Big U Enterprise and its members and associates, including
Uneek Music and Developing Options;

g.    Gratifying Big U Enterprise members and associates by
trafficking and exploiting sex workers; and

h.    Concealing and protecting the illegal activities of
the Big U Enterprise and its members and associates from detection by

6

1  law enforcement through means that included, among other things,

2  witness tampering and obstruction of justice.

3  C.    <u>MEANS AND METHODS OF THE ENTERPRISE</u>

4       11.    Among the means and methods by which members and associates

5  of the Big U Enterprise conducted and participated in the conduct of

6  the affairs of the Big U Enterprise included, but were not limited

7  to, the following:

8            a.    Members and associates of the Big U Enterprise

9  committed, and conspired, attempted, and threatened to commit, acts

10  of violence, including murder, armed assaults, robberies, extortions,

11  acts of intimidation, and threats of violence in order to generate

12  income, create an atmosphere of fear, protect and expand the Big U

13  Enterprise's reputation for violence, and expand the Big U

14  Enterprise's criminal operations.

15           b.    Members and associates of the Big U Enterprise would

16  use defendant HENLEY's history and reputation, including his

17  connections to the violent Rollin' 60s street gang, to tout the Big U

18  Enterprise's reputation for violence and that the Big U Enterprise

19  "controlled" Los Angeles.

20           c.    As part of the Big U Enterprise's purported "control"

21  of Los Angeles, individuals including professional athletes,

22  musicians, and others, intending to conduct certain types of business

23  in Los Angeles, including both legitimate business and illicit

24  criminal conduct, were required to "check in" with defendant HENLEY

25  prior to traveling to Los Angeles or engaging in certain activities

26  in order to obtain "protection" from the Big U Enterprise while in

27  Los Angeles.  Defendant HENLEY hosted a podcast titled "Checc'n In,"

28  the opening theme song of which explained, "When you hop off the

plane, check in.  Penthouse suite, check in.  When your feet hit the street, check in.  'Cause if not, shit get hot.  You better check in."  The "check in" included both a payment to the Big U Enterprise as well as requesting permission from defendant HENLEY to conduct certain activities, including acts of violence, that were sanctioned by the Big U Enterprise.  As defendant HENLEY described in a documentary film that he produced about his life titled "Hip Hop Uncovered," "if I don't pick up the phone, that can mean death for somebody."  On the "Nothin 2 Somethin" podcast, defendant HENLEY said, "You gonna check in . . . .  You could choose not to, and it's gonna be a problem . . . .  If you choose not to check in, you suffer the consequences; you feel like you got something bigger than what's there" and that not checking in is basically "an act of war . . . . It ain't not one human being who not gonna check in."  In a video defendant HENLEY recorded of a film crew in Los Angeles's Hyde Park neighborhood in or around 2017, as depicted in the below image, defendant HENLEY claimed, "Anytime you want to do movies in the hood, just check it in . . . , but if you don't check it in, we going to check you in alright . . . .  We going to check in all your equipment."

1          d.   While members and associates of the Big U Enterprise

2  used defendant HENLEY's and the Big U Enterprise's history and

3  reputation in order to "control" Los Angeles through violence, fear,

4  and intimidation, defendant HENLEY simultaneously attempted to create

5  an air of legitimacy for himself publicly by promoting himself as a

6  reformed gang member focused on bettering his community through

7  purported nonprofit organizations he founded, such as Developing

8  Options, and by soliciting donations from celebrities and grants from

9  governments and foundations to these charitable organizations.  In

10  actuality, defendant HENLEY and other members and associates of the

11  Big U Enterprise used these purported nonprofit entities to enrich

12  and further the objectives of the Big U Enterprise, including by:

13          i.   Embezzling funds meant as charitable donations to

14  the nonprofit entities;

15          ii.  Using the nonprofit entities to fraudulently

16  apply for government assistance and loans; and

17          iii. Using the nonprofit entities to falsify

18  employment and financial records to personally benefit members and

19  associates of the Big U Enterprise.

20          e.   Members and associates of the Big U Enterprise would

21  "discipline" other members and associates of the Big U Enterprise who

22  acted in ways seen as detrimental to the Big U Enterprise, or other

23  individuals who were seen as disrespecting the Big U Enterprise or

24  its members, including through threats and acts of violence such as

25  assault, kidnapping, and murder.

26          f.   Members and associates of the Big U Enterprise would

27  avoid detection and apprehension by law enforcement by, among other

28  activities:

1                     i.    Attempting to thwart and evade law enforcement
2    surveillance;

3                     ii.   Destroying video surveillance or other evidence;
4    and

5                     iii. Threatening or pressuring victims or witnesses of
6    crimes committed by members or associates of the Big U Enterprise to
7    avoid interaction with, or to provide untruthful statements or
8    testimony to, law enforcement officers.

9    D.   THE RACKETEERING CONSPIRACY

10        12.  Beginning no later than in or around 2010, and continuing
11   to on or about March 19, 2025, in Los Angeles County, within the
12   Central District of California, and elsewhere, defendants HENLEY,
13   ROBINSON, and MARTIN, and others known and unknown to the Grand Jury,
14   each being a person employed by and associated with the Big U
15   Enterprise, an enterprise engaged in, and the activities of which
16   affected, interstate and foreign commerce, knowingly and
17   intentionally conspired to violate Title 18, United States Code,
18   Section 1962(c), that is, to conduct and participate, directly and
19   indirectly, in the conduct of the affairs of the Big U Enterprise
20   through a pattern of racketeering activity, as that term is defined
21   in Title 18, United States Code, Sections 1961(1) and 1961(5), which
22   pattern of racketeering consisted of:

23                  a.    multiple acts involving:

24                     i.    murder, chargeable under Nevada Revised Statutes,
25   Sections 200.010, 200.030, 193.330, 193.153, 195.020, 199.480, and
26   199.490;

27

28

10

1          ii.  kidnapping, chargeable under Nevada Revised

2  Statutes, Sections 200.310, 193.330, 193.153, 195.020, 199.480, and

3  199.490;

4          iii. robbery, chargeable under California Penal Code,

5  Sections 211, 212, 212.5, 213, 21a, 31, 182, and 664;

6          iv.  extortion, chargeable under California Penal

7  Code, Sections 518, 519, 524, 21a, 31, 182, and 664; and

8      b.    multiple acts indictable under:

9          i.    Title 18, United States Code, Section 1343

10  (relating to wire fraud);

11          ii.  Title 18, United States Code, Section 1344

12  (relating to financial institution fraud);

13          iii. Title 18, United States Code, Section 1951

14  (relating to interference with commerce, robbery, or extortion); and

15          iv.  Title 18, United States Code, Section 2421

16  (relating to interstate transportation for the purpose of

17  prostitution).

18      13.  It was part of the conspiracy that each defendant agreed

19  that a co-conspirator would commit at least two acts of racketeering

20  in the conduct of the affairs of the Big U Enterprise.

21  E.  OVERT ACTS

22      14.  In furtherance of the conspiracy, and to accomplish its

23  objects, on or about the following dates, defendants HENLEY,

24  ROBINSON, and MARTIN, together with others known and unknown to the

25  Grand Jury, committed and willfully caused to be committed various

26  overt acts within the Central District of California and elsewhere,

27  including, but not limited to, the following:

28

11

1. **Defendants HENLEY and ROBINSON Drove from Los Angeles to Las Vegas, Where Defendant HENLEY Kidnapped and Murdered Victim R.W., a Uneek Music Artist Whom Defendant HENLEY Believed Had Disrespected the Big U Enterprise**

    (a) <u>Defendant HENLEY Arranged for Victim R.W. to Record at a Music Studio in Las Vegas and Then Confronted Victim R.W. for Lack of Production</u>

<u>Overt Act No. 1:</u>    In January 2021, defendant HENLEY, using his influence and reputation and the influence and reputation of the Big U Enterprise, arranged for victim R.W. to record music at a studio owned by a Grammy-winning producer (the "Producer") in Las Vegas, Nevada (the "studio").

<u>Overt Act No. 2:</u>    In January 2021, at defendant HENLEY's direction, K.F. -- an employee of Uneek Music -- arranged for victim R.W.'s air travel to Las Vegas on January 19, 2021, and expected return to Los Angeles on January 26, 2021.

<u>Overt Act No. 3:</u>    In January 2021, at defendant HENLEY's direction, K.F. also arranged for victim R.W.'s lodging at an Airbnb in Las Vegas (the "Airbnb") also from January 19, 2021, to January 26, 2021, so that victim R.W. could record music at the studio on behalf of Uneek Music.

<u>Overt Act No. 4:</u>    On January 23, 2021, defendants HENLEY and ROBINSON drove from Los Angeles to Las Vegas in a Lexus sedan (the "sedan") to confront victim R.W. about his lack of production in the studio.

<u>Overt Act No. 5:</u>    On January 24, 2021, at approximately 2:00 a.m., defendant HENLEY arrived at the Airbnb in the sedan and asked victim R.W. why victim R.W. had not been at the studio the previous day, wasting studio time and disrespecting Uneek Music and the Big U Enterprise.

1              (b)   <u>Defendant HENLEY Kidnapped and Murdered Victim R.W.</u>
                    <u>for Perceived Disrespect to the Big U Enterprise</u>

2

3    <u>Overt Act No. 6:</u>   On January 24, 2021, defendants HENLEY and

4 ROBINSON arrived in the sedan at the studio where victim R.W. was

5 scheduled to record a song.

6    <u>Overt Act No. 7:</u>   On January 24, 2021, at the direction of

7 defendant HENLEY, victim R.W. recorded a song at the studio before

8 midnight.

9    <u>Overt Act No. 8:</u>   On January 25, 2021, at approximately 12:58

10 a.m., defendant HENLEY's two phones stopped reporting location data,

11 indicating that they were turned off or placed in airplane mode,

12 while in the vicinity of the studio.

13    <u>Overt Act No. 9:</u>   On January 25, 2021, defendant HENLEY drove

14 victim R.W. from the studio to the Airbnb in the sedan.

15    <u>Overt Act No. 10:</u>   On January 25, 2021, at approximately 1:20

16 a.m., victim R.W. left the Airbnb with his suitcase packed and

17 entered the sedan with defendant HENLEY, one day before victim R.W.'s

18 scheduled checkout from the Airbnb and one day before victim R.W.'s

19 return flight to Los Angeles.

20    <u>Overt Act No. 11:</u>   On January 25, 2021, defendant HENLEY drove

21 victim R.W. north of Las Vegas on Interstate 15 near the Apex

22 Regional Landfill.

23    <u>Overt Act No. 12:</u>   On January 25, 2021, defendant HENLEY drove

24 south on Interstate 15 back to Las Vegas.

25    <u>Overt Act No. 13:</u>   On January 25, 2021, at approximately 2:15

26 a.m., defendant HENLEY's two phones both began reporting location

27 data again, indicating that they were turned on or taken out of

28

airplane mode, while defendant HENLEY was continuing to drive south from Interstate 15 to U.S. 95, back to Las Vegas.

Overt Act No. 14:    On January 25, 2021, at approximately 2:20 a.m., defendant HENLEY called defendant ROBINSON, who was still at the studio.

Overt Act No. 15:    On January 25, 2021, at approximately 2:30 a.m., defendant HENLEY returned to the studio, telling an employee at the studio that he had gone to the gym.

Overt Act No. 16:    On January 25, 2021, victim R.W.'s body was found off Interstate 15, in the area depicted below, with multiple gunshot wounds to the head.



1

           (c)  <u>Big U Enterprise Members and Associates Attempted to
Cover Up the Murder</u>

2

3       <u>Overt Act No. 17:</u>  On January 25, 2021, defendant HENLEY

4 contacted the Producer to inform him that Nevada homicide detectives

5 would be interviewing the Producer about the death of victim R.W.

6       <u>Overt Act No. 18:</u>  On January 26, 2021, defendant HENLEY

7 contacted the Producer and demanded that the Producer and his

8 employees leave the studio premises.

9       <u>Overt Act No. 19:</u>  On January 26, 2021, at defendant HENLEY's

10 direction, Big U Enterprise associate D.S., and others known and

11 unknown to the Grand Jury, removed portions of the security system

12 from the studio, including security video and data from the times

13 victim R.W. and defendants HENLEY and ROBINSON were present at the

14 studio prior to victim R.W.'s murder.

15       <u>Overt Act No. 20:</u>  On January 27, 2021, at approximately 10:03

16 p.m., K.F. asked the Airbnb owner if there were cameras on the

17 property.

18       <u>Overt Act No. 21:</u>  On January 27, 2021, K.F. directed the owner

19 of the account that he used to book victim R.W.'s Airbnb not to speak

20 with law enforcement about victim R.W.'s murder.

21       <u>Overt Act No. 22:</u>  On February 3, 2021, K.F. falsely told law

22 enforcement that he did not know the address of the studio and did

23 not have a phone number for, or any way to contact, defendant HENLEY.

24       <u>Overt Act No. 23:</u>  On December 31, 2022, on an intercepted

25 call, defendant HENLEY explained his motivation for committing

26 murders on behalf of the Big U Enterprise, stating: "What you guys

27 see on the Internet, y'all keep hearing other people who don't have

28 nothing to talk about but sell.  Let me explain something to you.  If

1  I would've had a problem with any man, color, creed, king, or kind,

2  the issue would've been resolved, and he wouldn't be here, or I

3  wouldn't be here.  It ain't no kid nothin'.  And it damn near nobody

4  who been in this muthafucka longer than me, can stand against me, and

5  me be who I am.  If I had a problem with any man, and this wouldn't

6  be so funny to me.  I'm still who they say I am."

7           (d)   Big U Enterprise Members and Associates Attempted
                  to Evade Law Enforcement and Control and Intimidate
8                 Witnesses to the Murder

9      Overt Act No. 24:   On February 14, 2023, to evade law

10 enforcement interaction regarding victim R.W.'s murder, defendant

11 HENLEY's wife, S.H., falsely informed detectives that defendant

12 HENLEY did not live at his residence fulltime.

13     Overt Act No. 25:   On February 14, 2023, on an intercepted

14 call, after speaking with detectives, S.H. called defendant HENLEY

15 from defendant HENLEY's father's phone to warn defendant HENLEY that

16 detectives were seeking to discuss victim R.W.'s murder with

17 defendant HENLEY, and defendant HENLEY asked how many officers were

18 there.

19     Overt Act No. 26:   Beginning on February 14, 2023, to evade law

20 enforcement interaction regarding victim R.W.'s murder, defendant

21 HENLEY did not return home to his residence for multiple days.

22     Overt Act No. 27:   On February 14, 2023, to evade law

23 enforcement interaction regarding victim R.W.'s murder, defendant

24 HENLEY switched cars with defendant ROBINSON.

25     Overt Act No. 28:   On February 14, 2023, on an intercepted

26 call, defendant HENLEY called defendant MARTIN to schedule a meeting

27 to discuss victim R.W.'s murder and evading law enforcement.

28

Overt Act No. 29:   On February 14, 2023, on an intercepted call, defendant HENLEY called D.S. to discuss victim R.W.'s murder.

Overt Act No. 30:   On February 16, 2023, on an intercepted call, defendant HENLEY told D.S. that defendant HENLEY was traveling to Las Vegas the following day where the Producer was located.

Overt Act No. 31:   On February 21, 2023, on an intercepted call, defendant HENLEY ordered his son not to talk to anyone about victim R.W.'s murder.

Overt Act No. 32:   On February 21, 2023, on an intercepted call, defendant HENLEY told S.H. to call K.F.'s mother, but to do so on the encrypted FaceTime application, to discuss victim R.W.'s murder.

Overt Act No. 33:   On February 21, 2023, on an intercepted call, defendant HENLEY told S.H. to be careful what she discussed on the phone regarding victim R.W.'s murder.

Overt Act No. 34:   On February 21, 2023, on intercepted calls, defendant HENLEY arranged meetings with defendants MARTIN and ROBINSON.

Overt Act No. 35:   On February 23, 2023, as captured on a hidden recording device surreptitiously placed inside Under the Hood Muscle Cars, and after law enforcement attempted to contact defendants HENLEY and MARTIN, defendant HENLEY speculated whether they were under law enforcement surveillance for victim R.W.'s murder.

//

//

17

    **2.    For Years, Members and Associates of the Big U Enterprise
Extorted Victims Through Actual and Threatened Force,
Violence, Fear, and Intimidation**

        (a)    <u>Defendant HENLEY Sent Defendant ROBINSON and Others to
Rob Victim-1 and a Marijuana Dispensary at Gunpoint
After Victim-1 Stopped Making Extortion Payments</u>

<u>Overt Act No. 36</u>:   For years, defendant HENLEY extorted Victim-1, a music and club promoter who transitioned into a partnership with an unlicensed marijuana dispensary located on in Los Angeles (the "dispensary"), for up to $25,000 per month in extortion fees, until Victim-1 started to ignore defendant HENLEY's calls.

<u>Overt Act No. 37</u>:   On July 5, 2021, when Victim-1 had been ignoring defendant HENLEY's calls demanding extortion payments, defendant ROBINSON, Big U Enterprise member and self-proclaimed Rollin' 60s member Termaine Ashley Williams, aka "Luce Cannon" ("Williams"), and approximately nine other individuals, all acting at defendant HENLEY's direction, traveled to the dispensary and committed a robbery.

<u>Overt Act No. 38</u>:   On July 5, 2021, defendant ROBINSON, Williams, and others known and unknown to the Grand Jury stole products, cash, and multiple personal items from those in the dispensary, including Victim-1.

<u>Overt Act No. 39</u>:   On July 5, 2021, shortly after the robbery of Victim-1's dispensary, defendant HENLEY invited Victim-1 to defendant HENLEY's home, where defendant HENLEY, Williams, and other robbers were present, and many of the items robbed from the dispensary were on display.

<u>Overt Act No. 40</u>:   On July 5, 2021, at defendant HENLEY's home with the robbers and the items robbed from Victim-1's dispensary

1  present, defendant HENLEY told Victim-1, "That's how you rob

2  yourself."

3      Overt Act No. 41:   On July 5, 2021, at defendant HENLEY's home

4  with the robbers and the items robbed from Victim-1's dispensary

5  present, defendant HENLEY returned a portion of the robbery proceeds

6  to Victim-1 and told Victim-1 that he would need to pay $10,000 to

7  prevent future robberies.

8      Overt Act No. 42:   On July 5, 2021, at defendant HENLEY's home

9  with the robbers and the items robbed from Victim-1's dispensary

10 present, defendant HENLEY directed Victim-1 to identify other

11 marijuana businesses that they could similarly rob and offered to

12 provide Victim-1 with a portion of the robbery proceeds from targets

13 Victim-1 identified.

14     Overt Act No. 43:   On November 11, 2022, on an intercepted

15 call, defendant HENLEY and Big U Enterprise member and self-

16 proclaimed Rollin' 60s member Zihirr Mitchell, aka "Bricc Baby"

17 ("Mitchell"), coordinated how Mitchell would give defendant HENLEY

18 the proceeds from a robbery that Mitchell committed.

19     Overt Act No. 44:   On November 11, 2022, in intercepted calls

20 and text messages, while defendant HENLEY talked with Big U

21 Enterprise associate Fredrick Blanton, Jr. ("Blanton") and defendant

22 ROBINSON to help defendant HENLEY collect from Mitchell's associate,

23 Blanton said, "They robbed a nigga for some shit . . . .  They made a

24 nigga call his plug and then they booked him," to which defendant

25 HENLEY responded, "I'ma grab half of that whatever he got them.  I'm

26 give it to Vey . . . , and Vey can bring the rest of you."

27     Overt Act No. 45:   On November 11, 2022, in an intercepted

28 call, defendant HENLEY can be heard counting money and stating that

19

1   it "ain't nothing but two to three racks," to which Blanton

2   responded, "Bricc Baby said it was 'pose to be between five to seven,

3   man.  Gotta make that call out to Bricc man."

4        Overt Act No. 46:   On March 3, 2023, on an intercepted call,

5   defendant HENLEY described the modus operandi of the Big U

6   Enterprise's robberies, which included robbing individuals but not

7   taking everything from them so that they could continue to work, be

8   robbed, identify other robbery targets, and buy the stolen items back

9   from the Big U Enterprise.

10            (b)   Defendants HENLEY and ROBINSON Continued to Extort
                    Victim-1 and Others
11

12       Overt Act No. 47:   On July 9, 2021, defendant ROBINSON tasked

13  Victim-1 with identifying additional robbery victims for defendants

14  HENLEY and ROBINSON.

15       Overt Act No. 48:   On July 9, 2021, defendant ROBINSON told

16  Victim-1 that although Victim-1 had paid a portion of his extortion

17  debt to defendant HENLEY, Victim-1 had not paid all of it.

18       Overt Act No. 49:   On August 6, 2021, to intimidate Victim-1,

19  defendant ROBINSON told Victim-1, "Tryna lick somebody, that ain't

20  even hard.  [UI]  All this shit, it's just, this ain't workin', man.

21  I'm like, 'Man, I'm in the wrong business, homie.'"

22       Overt Act No. 50:   On September 2, 2021, defendant HENLEY told

23  Victim-1 that any proceeds Victim-1 received from a separate business

24  owner must be paid to defendant HENLEY.

25       Overt Act No. 51:   On September 3, 2021, defendant ROBINSON

26  told Victim-1 that defendant ROBINSON needed to tell defendant HENLEY

27  something about Victim-1's outstanding extortion debt, and to appease

28

defendant HENLEY, Victim-1 said that he could pay either $500 or $1,000.

Overt Act No. 52:   On September 15, 2021, defendant ROBINSON demanded payment from Victim-1 for defendant HENLEY but stated that he would allow Victim-1 to pay the following day.

Overt Act No. 53:   On September 20, 2021, defendant HENLEY and Victim-1 discussed how the portions of an extortion payment would be divided between defendants HENLEY and ROBINSON, the Rollin' 60s, and Victim-1.

Overt Act No. 54:   On September 20, 2021, defendant ROBINSON discussed with Victim-1 how defendants ROBINSON and HENLEY were "tax[ing]" Victim-1.

Overt Act No. 55:   On September 23, 2021, to intimidate Victim-1, defendant HENLEY expressed his frustration that Victim-1 and another extortion victim, a local businessowner, were not paying their extortion payments to the Big U Enterprise.

Overt Act No. 56:   On October 19, 2021, to intimidate Victim-1, defendant HENLEY told Victim-1 that defendant HENLEY was taking over the extortion of a businessowner and taking the profits from "every fifth table" sold at the establishment.

Overt Act No. 57:   On October 22, 2021, defendant HENLEY asked Victim-1 why Victim-1 was calling defendant HENLEY instead of paying his extortion debt.

Overt Act No. 58:   On October 22, 2021, defendant ROBINSON provided Victim-1 a phone number for a Big U Enterprise associate to send electronic extortion payments.

21

Overt Act No. 59:    On November 10, 2021, defendant HENLEY directed Victim-1 to start running an illegal marijuana shop to pay "rent" to the Big U Enterprise.

Overt Act No. 60:    On November 29, 2021, defendant ROBINSON directed Victim-1 to pay defendant HENLEY $1,000 on a weekly basis.

Overt Act No. 61:    On November 29, 2021, to intimidate Victim-1, defendant ROBINSON asked Victim-1 where another extortion victim lived so that defendants ROBINSON and HENLEY could "fuck [him] up."

Overt Act No. 62:    On November 29, 2021, Victim-1 paid defendant HENLEY a $500 extortion payment.

Overt Act No. 63:    On December 11, 2021, defendant ROBINSON asked Victim-1 how much extortion money Victim-1 had for defendant HENLEY and stated that defendant HENLEY was going to "want at least a thousand."

Overt Act No. 64:    On December 17, 2021, defendant ROBINSON asked Victim-1 how much extortion money Victim-1 would have and discussed cash and electronic payments.

Overt Act No. 65:    On December 18, 2021, defendant ROBINSON again asked Victim-1 how much extortion money Victim-1 would have.

Overt Act No. 66:    On January 20, 2022, defendant ROBINSON extorted $1,000 in cash from Victim-1 for defendant HENLEY and the Big U Enterprise.

Overt Act No. 67:    On February 17, 2022, Victim-1 requested an extension from defendant ROBINSON regarding an extortion payment, and defendant ROBINSON told him he had been holding defendant HENLEY off already.

Overt Act No. 68:    On February 17, 2022, Victim-1 paid defendant ROBINSON a $1,000 extortion fee.

Overt Act No. 69:   On February 19, 2022, defendant HENLEY called Victim-1 and demanded $1,500 "real quick."

Overt Act No. 70:   On April 3, 2022, defendant ROBINSON told Victim-1 that defendant HENLEY was increasing Victim-1's "taxes" to $3,500.

Overt Act No. 71:   On April 9, 2022, defendant ROBINSON told Victim-1 that other individuals were paying the Big U Enterprise $2,500 to $3,000 so that defendant HENLEY could purchase S.H. a $30,000 necklace.

Overt Act No. 72:   On April 10, 2022, defendant ROBINSON told Victim-1 that defendant HENLEY wanted to collect $2,000 from Victim-1 every Monday.

Overt Act No. 73:   On April 16, 2022, defendant HENLEY told Victim-1 that he needed a "donation" for S.H.'s birthday.

Overt Act No. 74:   On June 5, 2022, to intimidate Victim-1, defendants HENLEY and ROBINSON demanded that Victim-1 stop doing business with "Wack 100" because "Wack 100" was suspected to be an informant.

Overt Act No. 75:   On June 22, 2022, defendant ROBINSON called Victim-1 and demanded money because defendant HENLEY had demanded it.

Overt Act No. 76:   On June 22, 2022, to intimidate Victim-1, defendant ROBINSON told Victim-1 that defendant HENLEY had been asking defendant ROBINSON if the Big U Enterprise needed to do a "takeover" of Victim-1, referring to the previous takeover robbery of Victim-1's dispensary after Victim-1 stopped paying the Big U Enterprise extortion fees.

Overt Act No. 77:   On June 22, 2022, to intimidate Victim-1, defendant ROBINSON told Victim-1 that when a Big U Enterprise member

23

spent time with defendant HENLEY, it was necessary to carry a
firearm.

Overt Act No. 78:    On July 9, 2022, to intimidate Victim-1,
defendant HENLEY told Victim-1 that defendant HENLEY had seen "Wack
100" with his wife and daughter and "there's 15 to 20 niggas with us,
with hoodies tied down.  I got my hoodie on all black, tied down.
She like, boom, she jumped in the car, paid for [UI] and then took
off.  Boom, this nigga screamin', 'My wife, Draws, I see you, Eugene,
I see you, Eugene Henley, I see you!'  He screamin' all that, 'He's
got his blower, [UI] his blower out [UI],' but he's fucked up because
nobody's around.  We like, 'Bitch ass nigga.'  I'm like, 'Yeah bitch
ass nigga.'  He like, '[UI] die here, man.  Don't do this.  My wife,
my kids in that car.  Draws, Draws, Draws, don't do this,' he
screamin'."

Overt Act No. 79:    On July 9, 2022, to intimidate Victim-1,
defendant HENLEY threatened Victim-1, "We gotta rob someone.  You
with that bullshit."

Overt Act No. 80:    On July 14, 2022, defendant ROBINSON told
Victim-1 that defendant HENLEY was angry with Victim-1 and demanded
$2,000 from Victim-1.

Overt Act No. 81:    On July 21, 2022, defendant HENLEY demanded
money from Victim-1 and stated that he needed the money for taxes and
the Employment Development Department.

Overt Act No. 82:    On July 31, 2022, defendant HENLEY told
Victim-1 that defendant HENLEY needed $30,000 to pay his Developing
Options staff and was considering a robbery and increased extortions
to obtain the funds, saying that defendant HENLEY did not care if
they had to rob Peter to pay Paul, they needed to "get down."

24

1    <u>Overt Act No. 83:</u>   On July 31, 2022, Victim-1 paid defendant
2    HENLEY a $1,500 extortion payment after defendant HENLEY told Victim-
3    1 that "we bumped the weekly down to $1,500."

4    <u>Overt Act No. 84:</u>   On August 4, 2022, defendant ROBINSON told
5    Victim-1 that Victim-1 needed to pay defendants HENLEY and ROBINSON.

6    <u>Overt Act No. 85:</u>   On August 9, 2022, Victim-1 paid defendant
7    ROBINSON a $1,500 extortion payment.

8    <u>Overt Act No. 86:</u>   On September 7, 2022, defendant ROBINSON
9    told Victim-1 that Victim-1 needed to pay but explained how Victim-1
10   could get more time to pay.

11   <u>Overt Act No. 87:</u>   On September 15, 2022, Victim-1 paid
12   defendant ROBINSON a $2,000 extortion payment.

13   <u>Overt Act No. 88:</u>   On September 15, 2022, when Victim-1 asked
14   why Victim-1 and others were still paying extortion fees to the Big U
15   Enterprise, defendant ROBINSON explained that "when [defendant
16   HENLEY] got out, he said, 'I'm the toughest nigga, and here's my body
17   of work to prove it.  And you know . . . I'm the only nigga still
18   killin' niggas today.  You niggas retired.  I didn't.'  They
19   understand that."

20   <u>Overt Act No. 89:</u>   On September 21, 2022, Victim-1 paid
21   defendant ROBINSON a $1,000 extortion payment.

22   <u>Overt Act No. 90:</u>   On September 28, 2022, Victim-1 paid
23   defendant ROBINSON a $2,020 extortion payment.

24   <u>Overt Act No. 91:</u>   On October 2, 2022, to intimidate Victim-1,
25   defendant ROBINSON told Victim-1 that, if defendant ROBINSON was not
26   serving as a middleman for Victim-1 between Victim-1 and defendant
27   HENLEY, it would be "very, very bad" for Victim-1.

28

1    <u>Overt Act No. 92:</u>  On October 2, 2022, defendant ROBINSON
2  stated that two people owed the Big U Enterprise $200,000 but
3  defendant ROBINSON had not yet threatened them with violence.

4    <u>Overt Act No. 93:</u>  On October 5, 2022, Victim-1 paid defendant
5  ROBINSON a $2,000 extortion payment.

6    <u>Overt Act No. 94:</u>  On October 21, 2022, defendant HENLEY
7  chastised Victim-1 because an acquaintance of Victim-1 had used
8  defendant HENLEY's name and the stature of the Big U Enterprise to
9  increase his reputation in the community.

10    <u>Overt Act No. 95:</u>  On October 21, 2022, defendant HENLEY
11  demanded that Victim-1 pay defendant HENLEY for Victim-1's
12  acquaintance using defendant HENLEY's name and the stature of the Big
13  U Enterprise to increase his reputation in the community.

14    <u>Overt Act No. 96:</u>  On October 21, 2022, when Victim-1 asked how
15  to get his acquaintance to pay for using defendant HENLEY's name and
16  the stature of the Big U Enterprise to increase his reputation in the
17  community, defendant HENLEY suggested that Victim-1 tie up the
18  acquaintance to get the money.

19    <u>Overt Act No. 97:</u>  On October 22, 2022, to intimidate Victim-1,
20  defendant ROBINSON told Victim-1 that defendants HENLEY and ROBINSON
21  would be attending an after-party at a club that Victim-1 was
22  promoting and that a "pat down is out" because defendant HENLEY would
23  be in attendance, implying that defendant HENLEY was armed.

24    <u>Overt Act No. 98:</u>  On November 3, 2022, on an intercepted call
25  discussing Victim-1, defendant HENLEY told defendant ROBINSON that
26  Victim-1 "wasted our name" and they needed to "fix that muthafucka up
27  and get our money."

28

26

<u>Overt Act No. 99:</u>  On November 10, 2022, Victim-1 paid defendant ROBINSON a $2,000 extortion payment.

<u>Overt Act No. 100:</u>  On November 10, 2022, defendant ROBINSON told Victim-1 not to answer Victim-1's phone if defendant HENLEY called Victim-1 because defendant HENLEY was demanding $5,000 from Victim-1.

<u>Overt Act No. 101:</u>  On December 1, 2022, Victim-1 paid defendant ROBINSON a $2,000 extortion payment.

<u>Overt Act No. 102:</u>  On December 1, 2022, defendant ROBINSON told Victim-1 that defendant ROBINSON was taking 25 to 50 percent of the payments from Victim-1, depending on how much the extortion payment was.

<u>Overt Act No. 103:</u>  On December 1, 2022, to intimidate Victim-1, defendant ROBINSON told Victim-1 that defendant HENLEY accused defendant ROBINSON of getting "soft" with Victim-1 and that defendant HENLEY was going to "fuck up" Victim-1.

<u>Overt Act No. 104:</u>  On December 7, 2022, defendant HENLEY told Victim-1 that he owed defendant HENLEY a lot of money and to bring defendant HENLEY $2,000 a week.

<u>Overt Act No. 105:</u>  On February 7, 2023, on an intercepted call, defendant HENLEY told defendant ROBINSON that he was going to "break [Victim-1]'s jaw."

<u>Overt Act No. 106:</u>  On February 14, 2023, on an intercepted call, as part of the extortion scheme, defendant ROBINSON told defendant HENLEY that defendant ROBINSON told "Jew Boy" that he owed the Big U Enterprise money, that they would allow a payment plan, but if he did not pay, they were going to "shut this motherfucker down."

<u>Overt Act No. 107</u>:  On February 15, 2023, Victim-1 paid
defendant ROBINSON a $500 extortion payment.

<u>Overt Act No. 108</u>:  On March 29, 2023, Victim-1 paid defendant
ROBINSON a $1,500 extortion payment.

<u>Overt Act No. 109</u>:  On March 29, 2023, defendant ROBINSON told
Victim-1 that defendant ROBINSON was only going to give $1,000 of the
$1,500 extortion payment to defendant HENLEY.

<u>Overt Act No. 110</u>:  On April 11, 2023, on an intercepted call,
defendant HENLEY and Blanton discussed an individual whom the Big U
Enterprise was planning to rob in the near future.

<u>Overt Act No. 111</u>:  On April 17, 2023, on an intercepted call,
as part of the extortion scheme, defendant HENLEY directed an
individual to deliver a message to another marijuana dispensary owner
that defendant HENLEY said, "fuck him . . . [and] that he fucked with
the wrong guy."

        (c)  <u>Defendants HENLEY, ROBINSON, and MARTIN, and Others,
Extorted Victim-2 Through Actual and Threatened Force,
Violence, Fear, and Intimidation</u>

<u>Overt Act No. 112</u>:  On December 2, 2021, Victim-2 was hosting
defendant HENLEY's birthday party at an adult entertainment club in
Los Angeles, for which Victim-2 was a promoter.

<u>Overt Act No. 113</u>:  On December 2, 2021, defendant HENLEY
demanded a $30,000 extortion payment for Victim-2 hosting defendant
HENLEY's birthday party.

<u>Overt Act No. 114</u>:  On December 2, 2021, defendant HENLEY
threatened to have "5,000 6-Os" destroy Victim-2's business and that
"if we got to tear that muthafucker up, we going to tear it up.  So
be ready for that; be ready for that.  Bring me my money!"

1       <u>Overt Act No. 115:</u>  On December 2, 2021, defendant HENLEY

2    further threatened Victim-2's business if Victim-2 did not pay,

3    threatening "I'll tear that bitch up!  It won't be a club there no

4    more!"

5       <u>Overt Act No. 116:</u>  On December 2, 2021, defendants ROBINSON and

6    MARTIN, and others known and unknown to the Grand Jury, including

7    members of the Rollin' 60s, confronted Victim-2 at his business and

8    extorted $30,000 from him.

9       <u>Overt Act No. 117:</u>  After defendants HENLEY, ROBINSON, and

10   MARTIN extorted $30,000 from Victim-2, Victim-1 and defendant

11   ROBINSON discussed how defendant MARTIN "transform[ed]" that night

12   and how they "took all that shit."

13       **3.**   **Defendant HENLEY Paid to Transport Women from Los Angeles
14          to Las Vegas for Prostitution**

15      <u>Overt Act No. 118:</u>  On November 10, 2022, on an intercepted

16   call, defendant HENLEY called Armani Aflleje, aka "Mani" ("Aflleje"),

17   and offered to pay her $1,000 to transport women from Los Angeles to

18   Las Vegas to engage in pandering and prostitution.

19      <u>Overt Act No. 119:</u>  On November 10, 2022, on an intercepted

20   call, Aflleje asked defendant HENLEY, "How many girls I need to

21   bring?" to which defendant HENLEY responded, "That's on you."

22      <u>Overt Act No. 120:</u>  On November 10, 2022, on an intercepted

23   call, Aflleje told defendant HENLEY, "I'm 'bout to bag some bitches.

24   Guaranteed.  You already know I don't play no games."

25      <u>Overt Act No. 121:</u>  On November 10, 2022, defendant HENLEY sent

26   Aflleje $1,000 via Zelle to rent a car to transport the women from

27   Los Angeles to Las Vegas.

28

<u>Overt Act No. 122:</u>  On November 10, 2022, through text messages, Aflleje sent defendant HENLEY photographs of the women she was transporting to Las Vegas.

<u>Overt Act No. 123:</u>  On November 18, 2022, defendant HENLEY sent Aflleje $500 via Zelle for the trip.

<u>Overt Act No. 124:</u>  On January 5, 2023, on an intercepted call between defendant HENLEY, Aflleje, and another person, defendant HENLEY said, "Remember when I told you I be in Vegas?  . . . That's her . . . .  She goin' make every bitch get naked.  'Right there, bitch, get naked.  Give my brother some head.  Right now.'"

<u>Overt Act No. 125:</u>  On June 29, 2023, on an intercepted call, after learning that law enforcement investigators interviewed Aflleje, defendant HENLEY remarked that he was stressed out because investigators approached a woman with whom he was having sex and talked to her about how defendant HENLEY was trying to buy girls and be a pimp.

<u>Overt Act No. 126:</u>  On June 30, 2023, on an intercepted call, defendant HENLEY said, "Shit, so you gonna get me and say my crime is sending girls money for sex.  Is that my crime?"

**4.   Defendant HENLEY Defrauded Donors Making Charitable Contributions to Developing Options and Other Purported Nonprofits Intended to Help the Community**

<u>Overt Act No. 127:</u>  On August 20, 2019, Donor-1, a National Basketball Association ("NBA") All-Star player, wire-transferred $20,000 to a Bank of America account number ending in 8350 (the "Developing Options 8350 Account") that was intended as a charitable donation to Developing Options, not to benefit defendant HENLEY personally; on August 21, 2019, defendant HENLEY then wire-

transferred the entire $20,000 from Donor-1 into defendant HENLEY's personal bank account for his own personal use.

Overt Act No. 128:  On February 3, 2020, Donor-2, a music publishing corporation, donated $24,000 via check deposited into the Developing Options 8350 Account that was intended to provide football equipment for a local not-for-profit organization, not to benefit defendant HENLEY personally; on February 4, 2020, defendant HENLEY then wire-transferred $14,000 of the donation from Donor-2 into defendant HENLEY's personal bank account for his own personal use.

Overt Act No. 129:  On November 3, 2021, Developing Options deposited a $19,000 donation check from Donor-3, a content-aggregating video blog and co-producer of defendant HENLEY's "Checc'n In" podcast, that was intended to support Crenshaw Rams Football, a youth football team that Developing Options purportedly operated, not to benefit defendant HENLEY personally; on November 4, 2021, defendant HENLEY then wire-transferred $15,000 of Donor-3's donation into defendant HENLEY's personal bank account for his own personal use.

Overt Act No. 130:  On March 21, 2022, Donor-4, a nonprofit organization, whose goal was to revitalize South Los Angeles, donated $10,000 to the Developing Options 8350 Account intended to fund a meal program, not to benefit defendant HENLEY personally; on March 28, 2022, defendant HENLEY then wire-transferred the entire $10,000 from Donor-4 into defendant HENLEY's personal bank account for his own personal use.

Overt Act No. 131:  On September 21, 2022, Developing Options deposited a $20,000 check from Donor-5, a former NBA Most Valuable Player ("MVP"), that was intended to support Crenshaw Rams Football,

31

1 not to benefit defendant HENLEY personally; between September 26,
2 2022, and October 7, 2022, defendant HENLEY then transferred $13,000
3 from Donor-5's donation to his personal bank account for his own
4 personal use.

5     Overt Act No. 132:  On November 8, 2022, Donor-6, a production
6 company, wire-transferred a $100,000 donation to the Developing
7 Options 8350 Account that was intended to support Crenshaw Rams
8 Football, not to benefit defendant HENLEY personally; between
9 November 10, 2022, and December 1, 2022, defendant HENLEY then wire-
10 transferred $36,400 of Donor-6's donation into defendant HENLEY's
11 personal bank account for his own personal use.

12     Overt Act No. 133:  On December 13, 2022, Developing Options
13 deposited a $50,000 check from Donor-7, a nonprofit, donor-advised
14 fund that disburses charitable donations from individuals and
15 companies directly to nonprofit organizations on behalf of a
16 multinational music company, that was intended to pay the direct
17 program costs and expenses of operating Developing Options' social
18 justice programs and initiatives, not to benefit defendant HENLEY
19 personally; between December 19, 2022, and January 3, 2023, defendant
20 HENLEY then transferred $32,500 of Donor-7's donation into defendant
21 HENLEY's personal bank account for his own personal use.

22     **5.    Defendants HENLEY and MARTIN Aided a Big U Enterprise
          Associate and Developing Options Employee in Submitting
23        a Fraudulent Loan Application**

24     Overt Act No. 134:  On January 2, 2023, on an intercepted call,
25 Tiffany Shanrika Hines ("Hines"), a licensed loan officer for a
26 mortgage lending business, called defendant HENLEY to discuss a
27 failed loan application submitted by Blanton, an associate of the Big
28 U Enterprise and an employee of Developing Options.

Overt Act No. 135:  On January 2, 2023, on an intercepted call, Hines instructed defendant HENLEY to "put him on a salary and then increase it just for the time being because we know that he can afford the mortgage.  It's just the documentation."

Overt Act No. 136:  On January 13, 2023, defendants HENLEY and MARTIN, and others known and unknown to the Grand Jury, in order to benefit Big U Enterprise associate Blanton and to assist him in obtaining a loan, falsely increased Blanton's reported income from Developing Options, stating that Blanton had nonemployee compensation for the 2023 calendar year of approximately $6,500.

Overt Act No. 137:  On January 16, 2023, Blanton submitted a residential loan application, falsely claiming that he had monthly income of $8,166.67 from Developing Options, as Hines had instructed defendant HENLEY to do in order to fraudulently obtain the loan.

Overt Act No. 138:  On January 16, 2023, Hines submitted Blanton's application for underwriting, while failing to disclose her plan with defendants HENLEY and MARTIN that Blanton's reported income was artificially being increased on the loan application documents in order to fraudulently obtain the loan, and would be decreased after the loan was obtained.

**6.    Defendant HENLEY Defrauded the Small Business Administration of Monies for Pandemic-Related Relief**

(a)   Uneek Music Received $100,000 in SBA Funds

Overt Act No. 139:  On June 16, 2020, defendant HENLEY electronically submitted an application under the Economic Injury Disaster Loan Program on behalf of Uneek Music, in which he falsely represented that Uneek Music had gross revenues of $500,000 and a cost of goods sold of $300,000 in calendar year 2019.

33

1    Overt Act No. 140:  On June 24, 2020, defendant HENLEY

2    electronically signed a loan agreement between Uneek Music and the

3    Small Business Administration ("SBA"), in which he certified that all

4    representations in his application were true, correct, and complete.

5    Overt Act No. 141:  On June 26, 2020, defendant HENLEY accepted

6    from the SBA a transfer of approximately $89,900 -- a $90,000 loan

7    less the $100 filing fee -- into Uneek Music's checking account,

8    based on the fraudulent June 16, 2020 loan application and fraudulent

9    June 24, 2020 loan agreement.

10    Overt Act No. 142:  On July 7, 2020, defendant HENLEY accepted

11    from the SBA a transfer of approximately $10,000 into Uneek Music's

12    checking account based on the fraudulent June 16, 2020 loan

13    application.

14         (b)   Celebrity Socks Received $6,000 in SBA Funds

15    Overt Act No. 143:  On June 16, 2020, defendant HENLEY

16    electronically submitted an application under the Economic Injury

17    Disaster Loan Program for Celebrity Socks, doing business as Uneek

18    Socks, in which he falsely certified that the "Applicant is not

19    engaged in any illegal activity (as defined by Federal guidelines)."

20    Overt Act No. 144:  On June 19, 2020, in reliance on defendant

21    HENLEY's fraudulent misrepresentations, the SBA disbursed a $6,000

22    advance to defendant HENLEY.

23    //

24    //

25

26

27

28

7.    **Defendants HENLEY and ROBINSON, and Other Big U Enterprise Members and Associates, Continued to Attempt to Solidify the Enterprise's Control Over the Community**

(a)    <u>Members and Associates of the Big U Enterprise Continued to Engage in Violence in Furtherance of the Big U Enterprise and Boasted about the Big U Enterprise's Reputation for Violence and Its Illegal Activities to Instill Fear in, Intimidation of, and Control Over the Community</u>

<u>Overt Act No. 145</u>:  In November 2022, defendant HENLEY arranged for a co-conspirator to collect an illegal debt from a current NBA All-Star Player who purportedly owed $3,000,000 to a Big U Enterprise associate.

<u>Overt Act No. 146</u>:  In November 2022, defendant HENLEY took a portion of the debt that current NBA All-Star Player owed as a fee for collecting the illegal debt.

<u>Overt Act No. 147</u>:  On November 7, 2022, on an intercepted call, after an extortion victim stated that defendant HENLEY had not fully paid the extortion victim for work on defendant HENLEY's vehicle, defendant HENLEY directed defendant MARTIN to call the extortion victim "right now" and stated that he would "go out there n' kill that nigga"; defendant MARTIN then connected defendant HENLEY with the extortion victim and participated in the extortionate call.

<u>Overt Act No. 148</u>:  On November 14, 2022, on an intercepted call, defendant HENLEY described to a former National Football League ("NFL") player that defendant HENLEY would "beat the shit" out of the Producer, who owned of the studio in Las Vegas, because he "started shit" between defendant HENLEY and "Wack 100."

<u>Overt Act No. 149</u>:  On November 22, 2022, on an intercepted call, defendant HENLEY told an incarcerated individual that anyone

coming at him "better come correct" because defendant HENLEY always
has "two blowers" (i.e., firearms) on him.

Overt Act No. 150:  On November 22, 2022, on an intercepted
call, defendant HENLEY told an incarcerated individual that defendant
HENLEY was going to charge someone in federal prison $6,000 to have a
phone smuggled to him.

Overt Act No. 151:  On November 23, 2022, on an intercepted
call, defendant HENLEY said that he can pay three people $50 each to
beat someone up.

Overt Act No. 152:  On November 23, 2022, on an intercepted
call, defendant HENLEY described paying people to "mess up" a store
that was refusing to provide defendant HENLEY a discount.

Overt Act No. 153:  On December 27, 2022, on an intercepted
call, defendant HENLEY told a Big U Enterprise associate that they
need to "hang" "OG Crip Cuz."

Overt Act No. 154:  On December 27, 2022, on an intercepted
call, defendant HENLEY told another Big U Enterprise associate that
"OG Crip Cuz" needed to be "disciplined thoroughly" for a "violation
of crippin'."

Overt Act No. 155:  On December 30, 2022, on an intercepted
call, defendant HENLEY said that when defendant HENLEY catches "Wack
100," "I'ma break his jaw."

Overt Act No. 156:  On December 31, 2022, on an intercepted
call, defendant HENLEY said that defendant HENLEY was "bigger" than
deceased rapper Nipsey Hussle, that defendant HENLEY disciplined
Nipsey Hussle, and that defendant HENLEY was "bigger" than "any other
Rollin' 60."

1    <u>Overt Act No. 157:</u>  On December 31, 2022, on an intercepted

2    call, defendant HENLEY said that if anyone has an issue with

3    defendant HENLEY, they will no longer be alive.

4    <u>Overt Act No. 158:</u>  On January 1, 2023, on an intercepted call,

5    defendant HENLEY said that he was not beefing with Nipsey Hussle

6    because if anyone beefs with defendant HENLEY, "I'ma kill him.

7    Period.  I.  Am.  Going.  To.  Murder.  Him."

8    <u>Overt Act No. 159:</u>  On January 2, 2023, on an intercepted call,

9    defendant HENLEY told Big U Enterprise associate D.S. that to

10   manipulate the press for D.S.'s lawsuit against law enforcement, D.S.

11   should show both positive and negative parts of his life, wear

12   glasses, and say that he was working with Developing Options, even

13   though he was not.

14   <u>Overt Act No. 160:</u>  On January 2, 2023, on an intercepted call,

15   defendant HENLEY told Big U Enterprise associate D.S. that defendant

16   HENLEY needed to "at least" break the Producer's jaw.

17   <u>Overt Act No. 161:</u>  On January 3, 2023, on an intercepted call,

18   defendant HENLEY described to an incarcerated individual "tooling up"

19   with firearms to travel to a Crips neighborhood because "we are the

20   most arrogant, bougie, self-righteous motherfuckers on planet Earth."

21   <u>Overt Act No. 162:</u>  On January 3, 2023, on an intercepted call,

22   defendant HENLEY told an incarcerated individual that defendant

23   HENLEY was going to purchase six miniature phones to send to the

24   incarcerated individual so that he could sell them in prison for

25   $1,000 each.

26   <u>Overt Act No. 163:</u>  On January 5, 2023, on an intercepted call,

27   defendant HENLEY said that another individual was "done" for being "a

28   rat."

1    Overt Act No. 164:  On January 12, 2023, on an intercepted call,

2 defendant HENLEY said he wanted to "beat the shit out" of "Wack 100."

3    Overt Act No. 165:  On January 17, 2023, on an intercepted call,

4 defendant HENLEY discussed traveling to Jordan Downs, within Grape

5 Street Crip territory, and threatening to "kill motherfuckers every

6 day" until he got his things back.

7    Overt Act No. 166:  On January 17, 2023, on an intercepted call,

8 defendant HENLEY stated that he was the "hunter of the 60s" and that

9 he had obtained "paperwork" on individuals that should not be

10 associated with the gang anymore.

11    Overt Act No. 167:  On February 13, 2023, on an intercepted

12 call, defendant HENLEY told a co-conspirator that defendant HENLEY

13 was going to break the jaw of the business manager for a former NBA

14 MVP.

15    Overt Act No. 168:  On February 14, 2023, on an intercepted

16 call, defendant HENLEY described smacking the "Jew Boy" again.

17    Overt Act No. 169:  On April 1, 2023, on an intercepted call,

18 defendant HENLEY asked someone to grab defendant HENLEY's "blower,"

19 which he left on the ground, in a blue sweatshirt, in front of a

20 tire.

21    Overt Act No. 170:  On April 23, 2023, on an intercepted call,

22 defendant HENLEY discussed gang politics with a co-conspirator and

23 stated, "I'm retired, nigga?  Activist?  I'll pull up on your block

24 right now, nigga, and show up and show out, nigga.  That's what

25 happened to the last niggas that thought I was retired."

26 //

27 //

28

38

1
2
3

      (b)  <u>Defendant HENLEY Instructed a Victim to Obstruct
Justice by Providing Untruthful Information to Law
Enforcement about an Assault Committed by a Big U
Enterprise Associate</u>

4     <u>Overt Act No. 171:</u>  On December 9, 2022, an associate of

5 defendant HENLEY, and former NFL player, was involved in an

6 altercation with a victim at a restaurant in Los Angeles.

7     <u>Overt Act No. 172:</u>  On December 23, 2022, on an intercepted

8 call, defendant HENLEY instructed the victim's relative that the

9 victim was to "go to the lineup.  Tell him to pick the wrong person."

10     <u>Overt Act No. 173:</u>  On January 2, 2023, on a multi-way telephone

11 call, defendant HENLEY said, "The young nigga going to say he stole

12 his watch out the bathroom and [the former NFL player] came to get

13 his watch back and it turned into something else.  He's going to

14 apologize for stealing [the former NFL player]'s watch.  You know

15 what I'm saying, he thought it was somebody, he thought it was his

16 watch.  [The former NFL player] came back to get his watch, and it

17 turned into a scuffle.  They were only trying to prevent a crime

18 . . . .  Case dismissed."

19     <u>Overt Act No. 174:</u>  On January 7, 2023, on an intercepted call,

20 defendant HENLEY called the victim's relative and told him that the

21 victim needed to take the blame for the incident to avoid criminal

22 charges for the former NFL player.

23     <u>Overt Act No. 175:</u>  On January 7, 2023, defendant HENLEY met

24 with the victim's father in person.

25     <u>Overt Act No. 176:</u>  On January 9, 2023, while on an intercepted

26 call with the victim's relative, defendant HENLEY told him to "get

27 the criminal case off" them.

28

8. **Defendant HENLEY Fled from Law Enforcement, Obstructed the Investigation, and Attempted to Poison the Jury Pool Before Turning Himself In**

Overt Act No. 177:  In March 2025, defendant HENLEY learned of a law enforcement operation to arrest defendant HENLEY on March 19, 2025.

Overt Act No. 178:  On March 19, 2025, at approximately 12:30 a.m., defendant HENLEY's two phones stopped reporting location data, indicating that they were turned off or placed in airplane mode.

Overt Act No. 179:  In the early morning hours of March 19, 2025, defendant HENLEY and S.H. left their home to evade law enforcement apprehension.

Overt Act No. 180:  In the early morning hours of March 19, 2025, S.H. left her phone powered on and reporting location data from her and defendant HENLEY's home.

Overt Act No. 181:  On March 19, 2025, before fleeing their home, defendant HENLEY left a subpoena related to this investigation, which had been recently served on Developing Options, on a table near a hat for the Seattle Mariners, a professional sports team adopted by Rollin' 60s members as a symbol of the gang.

Overt Act No. 182:  On March 19, 2025, in an attempt to poison the jury pool, defendant HENLEY posted to the "Crenshaw Cougars" Instagram account, claiming racial profiling and blaming his co-defendants and opponents for the charges filed against him in a federal criminal complaint.

Overt Act No. 183:  On March 19, 2025, in an attempt to intimidate and dissuade anyone from cooperating with law enforcement or otherwise reporting information about defendant HENLEY, defendant HENLEY posted to the "Crenshaw Cougars" Instagram account, naming his

40

co-defendants and known opponents, instructing the public not to
associate with them, and claiming that if they did, "they were not
black."

    <u>Overt Act No. 184:</u>  On March 19, 2025, defendant HENLEY
surrendered to the United States Marshals Service without his phones
that previously stopped reporting location data.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT TWO

[18 U.S.C. § 1951(a)]

[DEFENDANTS HENLEY, ROBINSON, AND WILLIAMS]

15.   The Grand Jury re-alleges paragraphs 1 through 14 of this Indictment here.

A.   OBJECT OF THE CONSPIRACY

16.   Beginning on an unknown date, and continuing until at least on or about March 19, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendants EUGENE HENLEY, JR., also known as ("aka") "Big U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave Austin," SYLVESTER ROBINSON, aka "Vey," and TERMAINE ASHLEY WILLIAMS, aka "Luce Cannon," conspired with each other and others known and unknown to the Grand Jury to knowingly and intentionally obstruct, delay, and affect commerce and the movement of articles in commerce by robbery, in violation of Title 18, United States Code, Section 1951(a).

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
     ACCOMPLISHED

17.   The object of the conspiracy was to be accomplished, in substance, as follows:

     a.   Defendants HENLEY and ROBINSON, and other co-conspirators, would plan robberies.

     b.   Defendants ROBINSON and WILLIAMS, and other co-conspirators, would rob victims, carrying and brandishing firearms to control and frighten the victims and to demand property from the victims.

42

1             c.    Defendants ROBINSON and WILLIAMS, and other co-

2 conspirators, would deliver the stolen property to defendant HENLEY.

3             d.    Defendant HENLEY, and other co-conspirators, would

4 distribute the stolen property amongst the co-conspirators and

5 others, including sometimes giving some of the stolen property back

6 to its rightful owner.

7 C.   <u>OVERT ACTS</u>

8    18.  In furtherance of the conspiracy, and to accomplish its

9 object, defendants HENLEY, ROBINSON, and WILLIAMS, and others known

10 and unknown to the Grand Jury, committed various overt acts within

11 the Central District of California, and elsewhere, including, but not

12 limited to, the overt acts numbered 36 through 46 as set forth in

13 Count One of this Indictment, which are re-alleged here.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT THREE

[18 U.S.C. §§ 1951(a), 2]

[DEFENDANTS HENLEY, ROBINSON, AND WILLIAMS]

19.  The Grand Jury re-alleges paragraphs 1 through 18 of this Indictment here.

20.  On or about July 5, 2021, in Los Angeles County, within the Central District of California, defendants EUGENE HENLEY, JR., also known as ("aka") "Big U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave Austin," SYLVESTER ROBINSON, aka "Vey," and TERMAINE ASHLEY WILLIAMS, aka "Luce Cannon," and others known and unknown to the Grand Jury, each aiding and abetting the others, obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce by knowingly and willingly committing robbery, in that defendants HENLEY, ROBINSON, and WILLIAMS, and others known and unknown to the Grand Jury, unlawfully took and obtained property belonging to an unlicensed marijuana dispensary located in Los Angeles, California, from and in the presence of its employees, against their will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to their persons and property, and property in their custody and possession.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT FOUR

[18 U.S.C. § 1951(a)]

[DEFENDANTS HENLEY, ROBINSON, AND MARTIN]

21.  The Grand Jury re-alleges paragraphs 1 through 20 of this Indictment here.

A.  OBJECT OF THE CONSPIRACY

22.  Beginning on an unknown date, and continuing until at least on or about March 19, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendants EUGENE HENLEY, JR., also known as ("aka") "Big U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave Austin," SYLVESTER ROBINSON, aka "Vey," and MARK MARTIN, aka "Bear Claw," conspired with each other and others known and unknown to the Grand Jury to knowingly and intentionally obstruct, delay, and affect commerce and the movement of articles in commerce by extortion, in violation of Title 18, United States Code, Section 1951(a).

B.  MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

23.  The object of the conspiracy was to be accomplished, in substance, as follows:

a.  Defendants HENLEY, ROBINSON, and MARTIN, and other co-conspirators, would demand money or other property from a victim, sometimes disguised as a tax or protection fee, under threat or fear of physical violence or robbery.

b.  Defendants HENLEY, ROBINSON, and MARTIN, and other co-conspirators, would collect the extortion payment or other property from the victim.

45

1  C.    OVERT ACTS

2      24.  In furtherance of the conspiracy, and to accomplish its

3  object, defendants HENLEY, ROBINSON, and MARTIN, and others known and

4  unknown to the Grand Jury, committed various overt acts within the

5  Central District of California, and elsewhere, including, but not

6  limited to, the overt acts numbered 36 through 117 as set forth in

7  Count One of this Indictment, which are re-alleged here.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNTS FIVE THROUGH SEVENTEEN

[18 U.S.C. §§ 1951(a), 2]

[DEFENDANTS HENLEY AND ROBINSON]

25.  The Grand Jury re-alleges paragraphs 1 through 24 of this Indictment here.

26.  On or about the following dates, in Los Angeles County, within the Central District of California, defendants EUGENE HENLEY, JR., also known as ("aka") "Big U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave Austin," and SYLVESTER ROBINSON, aka "Vey," and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly and with intent to obtain property, obstructed, delayed, and affected, and attempted to obstruct, delay, and affect, interstate commerce by committing extortion, in that defendants HENLEY and ROBINSON obtained, and attempted to obtain, property, consisting of money from Victim-1, a partner in an unlicensed marijuana dispensary, promoter, and marketer operating in interstate commerce, by means of threatened force, violence, and fear of injury, immediate and future, to Victim-1 and Victim-1's businesses:

| COUNT | DATE | EXTORTION/ ATTEMPTED EXTORTION | AMOUNT |
|---|---|---|---|
| FIVE | November 29, 2021 | Attempted Extortion | $500 |
| SIX | January 20, 2022 | Attempted Extortion | $1,000 |
| SEVEN | February 17, 2022 | Attempted Extortion | $1,000 |
| EIGHT | July 31, 2022 | Extortion | $1,500 |

| COUNT | DATE | EXTORTION/ ATTEMPTED EXTORTION | AMOUNT |
|---|---|---|---|
| NINE | August 9, 2022 | Attempted Extortion | $1,500 |
| TEN | September 15, 2022 | Attempted Extortion | $2,000 |
| ELEVEN | September 21, 2022 | Extortion | $1,000 |
| TWELVE | September 28, 2022 | Extortion | $2,020 |
| THIRTEEN | October 5, 2022 | Attempted Extortion | $2,000 |
| FOURTEEN | November 10, 2022 | Attempted Extortion | $2,000 |
| FIFTEEN | December 1, 2022 | Attempted Extortion | $2,000 |
| SIXTEEN | February 15, 2023 | Extortion | $500 |
| SEVENTEEN | March 29, 2023 | Attempted Extortion | $1,500 |

COUNT EIGHTEEN

[18 U.S.C. §§ 1951(a), 2]

[DEFENDANTS HENLEY, ROBINSON, AND MARTIN]

27.  The Grand Jury re-alleges paragraphs 1 through 26 of this Indictment here.

28.  On or about December 2, 2021, in Los Angeles County, within the Central District of California, defendants EUGENE HENLEY, JR., also known as ("aka") "Big U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave Austin," SYLVESTER ROBINSON, aka "Vey," and MARK MARTIN, aka "Bear Claw," and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly and with intent to obtain property, obstructed, delayed, and affected interstate commerce by committing extortion, in that defendants HENLEY, ROBINSON, and MARTIN obtained property, consisting of $30,000 from Victim-2, a promoter of an international adult entertainment club, with a location in Los Angeles, California, by means of threatened force, violence, and fear of injury, immediate and future, to Victim-2 and Victim-2's business.

COUNT NINETEEN

[18 U.S.C. §§ 2421(a), 2]

[DEFENDANTS HENLEY AND AFLLEJE]

29.   The Grand Jury re-alleges paragraphs 1 through 28 of this Indictment here.

30.   In or around November 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendants EUGENE HENLEY, JR., also known as ("aka") "Big U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave Austin," and ARMANI AFLLEJE, aka "Mani," each aiding and abetting the other, knowingly transported and willfully caused to be transported individuals in interstate commerce, from the State of California to the State of Nevada, with the intent that the individuals engage in prostitution and other sexual activity for which a person could be charged with a criminal offense, namely, Pandering, in violation of Nevada Revised Statutes Section 201.300, and Prostitution Outside of Licensed House of Prostitution, in violation of Nevada Revised Statutes Section 201.353.

COUNTS TWENTY THROUGH TWENTY-FOUR

[18 U.S.C. § 1343]

[DEFENDANT HENLEY]

31.  The Grand Jury re-alleges paragraphs 1 through 30 of this Indictment here.

A.    THE ECONOMIC INJURY DISASTER LOAN PROGRAM

32.  The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic.  One form of assistance provided by the CARES Act was the authorization of loans, referred to as Economic Injury Disaster Loans ("EIDL"), through a United States Small Business Administration ("SBA") program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

33.  The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

34.  To obtain an EIDL loan, a qualifying business was required to submit an application to the SBA and provide information about the business's operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster.  In the case of EIDL loans for COVID-19 relief, the 12-month period was the 12-month period from January 31, 2019, to January 31, 2020.  The applicant was also required to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

51

35.  EIDL loan applications were submitted directly to the SBA and processed by the agency with support from a government contractor.  The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold, as described in paragraph 34 above.  Any funds issued under an EIDL loan were issued directly by the SBA.

36.  EIDL loan funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.  If the applicant also obtained a loan under the Paycheck Protection Program ("PPP"), the EIDL loan funds could not be used for the same purpose as the PPP loan funds.

B.    THE SCHEME TO DEFRAUD

37.  Beginning no later than on or about June 16, 2020, and continuing until at least on or about July 7, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant EUGENE HENLEY, JR., also known as ("aka") "Big U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave Austin," knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the SBA, and to obtain money and property by means of material false pretenses, representations, and promises, and the concealment of material facts.

38.  The scheme to defraud operated and was carried out, in substance, as follows:

a.    On or about June 16, 2020, using IP address 172.116.15.1 from Los Angeles, California, defendant HENLEY, as Chief Executive Officer of Uneek Music, submitted and caused to be

52

1    submitted a false and fraudulent application to the SBA for an EIDL

2    loan number ending in 8000 ("EIDL 8000") in the amount of $90,000 on

3    behalf of Uneek Music.

4          b.    Defendant HENLEY knowingly made false statements to

5    the SBA in connection with the application for EIDL 8000 for Uneek

6    Music, including false statements about (i) the gross revenue for

7    Uneek Music for the 12-month period preceding the disaster; (ii) the

8    cost of goods sold for Uneek Music for the 12-month period preceding

9    the disaster; and (iii) the truth and accuracy of the information and

10   documents submitted in, or with, the EIDL 8000 application.

11         c.    In connection with applying for EIDL 8000, defendant

12   HENLEY directed that the SBA wire-transfer the EIDL loan funds to a

13   Bank of America account number ending in 6812 (the "Uneek 6812

14   Account").

15      39.   Through materially false and fraudulent statements, and the

16   concealment of material facts, defendant HENLEY caused the SBA to

17   approve EIDL 8000 and to wire-transfer and deposit the EIDL loan

18   funds into the Uneek 6812 Account.

19   C.   USE OF THE WIRES

20      40.   On or about the dates set forth below, in Los Angeles

21   County, within the Central District of California, and elsewhere, for

22   the purpose of executing the scheme to defraud, defendant HENLEY

23   transmitted and caused the transmission of the following items by

24   means of wire communication in interstate commerce:

| COUNT | DATE | WIRING |
|-------|------|--------|
| TWENTY | June 16, 2020 | Electronic transmission of EIDL application number 3304936943 for EIDL 8000, using IP address 172.116.15.1 from Los Angeles, California, to the SBA, through a server located |

| COUNT | DATE | WIRING |
|-------|------|--------|
| | | in Des Moines, Iowa. |
| TWENTY-ONE | June 24, 2020 | Electronic transmission of Loan Authorization and Agreement for EIDL 8000, using IP address 172.116.15.1 from Los Angeles, California, to the SBA, through a server located in Des Moines, Iowa. |
| TWENTY-TWO | June 24, 2020 | Electronic transmission of Certificate of Completion and DocuSign authentication for EIDL 8000, using IP address 172.116.15.1 from Los Angeles, California, to the SBA, through a server located in Des Moines, Iowa. |
| TWENTY-THREE | June 26, 2020 | Wire transfer of proceeds of EIDL 8000 from the SBA Denver Finance Center located in Denver, Colorado, through a server in Sterling, Virginia, to the Uneek 6812 Account in Los Angeles, California, in the amount of approximately $89,900. |
| TWENTY-FOUR | July 7, 2020 | Wire transfer of a grant from the SBA Denver Finance Center located in Denver, Colorado, through a server in Sterling, Virginia, to the Uneek 6812 Account in Los Angeles, California, in the amount of approximately $10,000. |

1    COUNTS TWENTY-FIVE THROUGH THIRTY-FOUR

2    [18 U.S.C. §§ 1343, 2]

3    [DEFENDANT HENLEY]

4    41.  The Grand Jury re-alleges paragraphs 1 through 40 of this

5    Indictment here.

6    A.    THE SCHEME TO DEFRAUD

7    42.  Beginning as early as in or around August 2019 and

8    continuing through on or about March 19, 2025, in Los Angeles County,

9    within the Central District of California, and elsewhere, defendant

10   EUGENE HENLEY, JR., also known as ("aka") "Big U," aka "Unc," aka

11   "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody

12   Killa," aka "Dave Austin," and others known and unknown to the Grand

13   Jury, each aiding and abetting the others, knowingly and with intent

14   to defraud, devised, participated in, and executed a scheme to

15   defraud victim-donors to whom defendant HENLEY had agreed to apply

16   donated funds toward providing charitable services, including, but

17   not limited to, Donor-1, Donor-2, Donor-3, Donor-4, Donor-5, Donor-6,

18   and Donor-7, as to material matters, and to obtain money and property

19   from such victim-donors by means of material false and fraudulent

20   pretenses, representations, and promises, and the concealment of

21   material facts.

22   43.  The scheme to defraud operated and was carried out, in

23   substance, as follows:

24   a.   Defendant HENLEY would solicit donations from donors,

25   including but not limited to Donor-1, Donor-2, Donor-3, Donor-4,

26   Donor-5, Donor-6, and Donor-7, for donations to Developing Options,

27   an organization defendant HENLEY represented to donors as a

28

charitable organization that purported to divert at-risk youth away from gang activity.

   b. Defendant HENLEY would represent to donors that funds donated to Developing Options would be used for these charitable purposes.

   c. After the donated funds were deposited in or transferred to Developing Options' bank account, however, defendant HENLEY would transfer all or some of the donated charitable funds to his personal bank account for his own personal use.

  44. Through this scheme, defendant HENLEY defrauded donors of at least approximately $166,900.

B. <u>USE OF THE WIRES</u>

  45. On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant HENLEY, for the purpose of executing the scheme to defraud, transmitted, and caused the transmission of, the following items by means of wire communication in interstate and foreign commerce:

| COUNT | DATE | WIRING |
|---|---|---|
| TWENTY-FIVE | November 3, 2021 | Check in the amount of $19,000 from Donor-3 deposited at a Bank of America branch located in Los Angeles, California, which caused an electronic wire signal from J.P. Morgan Chase servers located outside California to Bank of America servers located in Richardson, Texas, and to Bank of America servers located in Los Angeles, California. |
| TWENTY-SIX | November 3, 2021 | Bank transfer in the amount of $15,000 from the Developing Options Bank of America account to defendant HENLEY's Bank of America account, which caused the transmission of an electronic wire signal from Bank of America servers located in Richardson, Texas, to Bank of America servers located in Los Angeles, California. |

| COUNT | DATE | WIRING |
|---|---|---|
| TWENTY-SEVEN | March 21, 2022 | Check in the amount of $10,000 from Donor-4 deposited at a Bank of America branch located in Los Angeles, California, which caused an electronic wire signal from servers to Bank of America servers located in Richardson, Texas, and to Bank of America servers located in Los Angeles, California. |
| TWENTY-EIGHT | March 28, 2022 | Bank transfer in the amount of $10,000 from the Developing Options Bank of America account to defendant HENLEY's Bank of America account, which caused the transmission of an electronic wire signal from Bank of America servers located in Richardson, Texas, to Bank of America servers located in Los Angeles, California. |
| TWENTY-NINE | September 21, 2022 | Check in the amount of $20,000 from Donor-5 deposited at a J.P. Morgan Chase branch located in Los Angeles, California, which caused an electronic wire signal from J.P. Morgan Chase servers outside California. |
| THIRTY | September 26, 2022 | Bank transfer in the amount of $4,000 from the Developing Options J.P. Morgan Chase account to defendant HENLEY's J.P. Morgan Chase account, which caused the transmission of an electronic wire signal from J.P. Morgan Chase servers located outside California. |
| THIRTY-ONE | November 8, 2022 | Wire transfer in the amount of $100,000 from Donor-6, routed through Fedwire Funds Service, which caused an electronic wire signal from servers in New Jersey or Texas, to the Developing Options J.P. Morgan Chase account, which caused an electronic wire signal to J.P. Morgan Chase servers located outside California. |
| THIRTY-TWO | November 15, 2022 | Bank transfer in the amount of $10,000 from the Developing Options J.P. Morgan Chase account to defendant HENLEY's J.P. Morgan Chase account, which caused the transmission of an electronic wire signal from Los Angeles, California, to J.P. Morgan Chase servers located outside California. |
| THIRTY-THREE | December 13, 2022 | Check in the amount of $50,000 from Donor-7 deposited at a J.P. Morgan Chase branch located in Los Angeles, California, which caused an electronic wire signal from PNC Bank, N.A. servers outside California to J.P. |

| COUNT | DATE | WIRING |
|-------|------|--------|
| | | Morgan Chase servers located outside California. |
| THIRTY-FOUR | December 19, 2022 | Bank transfer in the amount of $5,000 from the Developing Options J.P. Morgan Chase account to defendant HENLEY's J.P. Morgan Chase account, which caused the transmission of an electronic wire signal from Los Angeles, California, to J.P. Morgan Chase servers located outside California. |

COUNTS THIRTY-FIVE THROUGH THIRTY-NINE

[18 U.S.C. § 666(a)(1)(A)]

[DEFENDANT HENLEY]

46.    The Grand Jury re-alleges paragraphs 1 through 45 of this Indictment here.

47.    On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant EUGENE HENLEY, JR., also known as ("aka") "Big U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave Austin," being an agent of Developing Options, knowingly and willfully embezzled, stole, obtained by fraud, intentionally misapplied, and without authority converted to the use of a person not the rightful owner, the following properties valued at $5,000 or more that were owned by, and were under the care, custody, and control of Developing Options, an organization that received federal program benefits in excess of $10,000 in each of the years 2015 through 2023:

| COUNT | DATES | AMOUNT |
|-------|-------|--------|
| THIRTY-FIVE | November 3, 2021 | Transfer of $15,000 from Developing Options' bank account into defendant HENLEY's personal bank account. |
| THIRTY-SIX | March 28, 2022 | Transfer of $10,000 from Developing Options' bank account into defendant HENLEY's personal bank account. |
| THIRTY-SEVEN | Between September 26, 2022, and October 7, 2022 | Transfer of $13,000 from Developing Options' bank account into defendant HENLEY's personal bank account. |
| THIRTY-EIGHT | November 15, 2022 | Transfer of $10,000 from Developing Options' bank account into defendant HENLEY's personal bank account. |
| THIRTY-NINE | December 19, 2022 | Transfer of $5,000 from Developing Options' bank account into defendant |

| COUNT | DATES | AMOUNT |
|-------|-------|--------|
|       |       | HENLEY's personal bank account. |

COUNT FORTY

[18 U.S.C. §§ 1344(1), 2]

[DEFENDANTS HENLEY, MARTIN, BLANTON, AND HINES]

48.  The Grand Jury re-alleges paragraphs 1 through 47 of this
Indictment here.

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Count:

49.  Mortgage Lending Business-1 was a financial institution was
a mortgage lending business, which financed and refinanced debt
secured by interest in real estate, the activities of which affected
interstate and foreign commerce, with multiple branch locations
throughout the United States, including in the Central District of
California.

50.  Defendant TIFFANY SHANRIKA HINES was employed as a licensed
loan officer for Mortgage Lending Business-1 at a branch in Orange
County, within the Central District of California, and entrusted with
determining client eligibility for loan applications.

51.  Defendant FREDRICK BLANTON, JR. was a client of defendant
HINES with Mortgage Lending Business-1 and an employee of Developing
Options.

52.  Defendant EUGENE HENLEY, JR., also known as ("aka") "Big
U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad,"
aka "Anybody Killa," aka "Dave Austin," was the Chief Executive
Officer of Developing Options, and defendant MARK MARTIN, aka "Bear
Claw," was the Chief Financial Officer of Developing Options.  In
their respective positions, defendants HENLEY and MARTIN had control
over Developing Options' employees' salaries.

1  B.    THE SCHEME TO DEFRAUD

2      53.  Beginning in or around December 2022, and continuing

3  through in or around January 2023, in Los Angeles and Orange

4  Counties, within the Central District of California, and elsewhere,

5  defendants HENLEY, MARTIN, BLANTON, and HINES, together with others

6  known and unknown to the Grand Jury, knowingly and with intent to

7  defraud, devised, participated in, and executed a scheme to obtain

8  monies in the custody and control of Mortgage Lending Business-1, by

9  means of material false and fraudulent pretenses, representations,

10 and representations, and the concealment of material facts.

11     54.  The fraudulent scheme operated, in substance, in the

12 following manner:

13         a.    Between in or around December 2022 and in or around

14 January 2023, defendant BLANTON sought a $829,694 loan from Mortgage

15 Lending Business-1 for a residential mortgage.

16         b.    In order for defendant BLANTON to obtain the loan from

17 Mortgage Lending Business-1, defendants HENLEY, MARTIN, BLANTON, and

18 HINES omitted and concealed material facts and provided Mortgage

19 Lending Business-1 with materially false financial information,

20 including, but not limited to, false and fraudulent financial

21 statements.

22         c.    In support of the application for the loan, in or

23 around January 2023, defendant HINES advised defendants HENLEY,

24 MARTIN, and BLANTON to falsely inflate defendant BLANTON's reported

25 income from Developing Options in order to fraudulently make BLANTON

26 appear eligible for a loan.

27         d.    In support of the application for the loan, on or

28 about January 13, 2023, defendants HENLEY and MARTIN, and others

known and unknown to the Grand Jury, falsely reported defendant BLANTON's reported income from Developing Options to Mortgage Lending Business-1, stating that defendant BLANTON had nonemployee compensation for the 2023 calendar year of approximately $6,500.  In truth and in fact, as defendants HENLEY and MARTIN then knew, defendant BLANTON had no nonemployee compensation for the 2023 calendar year but rather had falsely inflated defendant BLANTON's reported income from Developing Options to assist him in fraudulently obtaining the loan.

　　　　e.　In support of the application for the loan, on or about January 16, 2023, defendant BLANTON submitted to Mortgage Lending Business-1 a residential loan application stating that defendant BLANTON had monthly income of $8,166.67 from Developing Options.  In truth and in fact, as defendant BLANTON then knew, defendants HENLEY and MARTIN had falsely increased defendant BLANTON's income by approximately $6,500.

　　　　f.　In support of the application for the loan, on or about January 16, 2023, defendant HINES submitted defendant BLANTON's application for underwriting, and, in doing so, defendant HINES failed to disclose to Mortgage Lending Business-1 that defendants HENLEY, MARTIN, BLANTON, and HINES had falsely inflated defendant BLANTON's income from Developing Options to Mortgage Lending Business-1 in order to fraudulently obtain a loan.

C.　EXECUTION OF THE SCHEME TO DEFRAUD

　　55.　On or about January 16, 2023, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendants HENLEY, MARTIN, BLANTON, and HINES, together with others known and unknown to the Grand Jury, executed the fraudulent scheme

63

1  by committing and willfully causing others to commit the submission

2  of the loan application to Mortgage Lending Business-1, falsely

3  representing a monthly income of $8,166.67 for defendant BLANTON.

COUNT FORTY-ONE

[26 U.S.C. § 7201]

[DEFENDANT HENLEY]

56.  The Grand Jury re-alleges paragraphs 1 through 55 of this Indictment here.

57.  Between in or around January 2019 through in or around April 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant EUGENE HENLEY, JR., also known as ("aka") "Big U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave Austin," willfully attempted to evade and defeat income tax due and owing by him to the United States of America, for the calendar year 2019, by causing to be prepared, and signing and causing to be signed, a false and fraudulent United States Individual Income Tax Return, Form 1040, which was submitted to the Internal Revenue Service and falsely and fraudulently failed to report taxable income for the calendar year 2019 that was $145,615 greater than the amount reported on the tax return, and as a result of such additional taxable income, there was $47,512 additional tax due and owing to the United States of America.

COUNTS FORTY-TWO THROUGH FORTY-THREE

[26 U.S.C. § 7203]

[DEFENDANT HENLEY]

58.  The Grand Jury re-alleges paragraphs 1 through 57 of this Indictment here.

59.  During the calendar years set forth below, defendant EUGENE HENLEY, JR., also known as ("aka") "Big U," aka "Unc," aka "Draws," aka "Hannibal," aka "Hannibal Muhammad," aka "Anybody Killa," aka "Dave Austin," a resident of Los Angeles County, within the Central District of California, had and received gross income in excess of $100,000.  By reason of gross income greater than $18,650 in 2020 and $18,800 in 2021, defendant HENLEY was required by law, following the close of those calendar years and on or before the dates set forth below, to make an income tax return to the Internal Revenue Service, at Fresno, California, to a person assigned to receive returns at the local office of the Internal Revenue Service in the Central District of California, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled.  Knowing and believing all of the foregoing, defendant HENLEY willfully failed, on or about the dates set forth below, in the Central District of California and elsewhere, to make an income tax returns for the calendar years set forth below:

| COUNT | CALENDAR YEAR | DATE OF FAILURE TO FILE |
|---|---|---|
| FORTY-TWO | 2020 | April 15, 2021 |
| FORTY-THREE | 2021 | April 15, 2022 |

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 1963]

1.     Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given that the United States of America will seek forfeiture as party of any sentence, pursuant to Title 18, United States Code, Section 1963, and Title 28 United States Code, Section 2461(c), in the event of any defendant's conviction of any of the offenses set forth in Count One of this Indictment.

2.     Any defendant so convicted shall forfeit to the United States of America the following:

(a)   Any interest the convicted defendant has acquired or maintained as a result of any such offense;

(b)   Any interest in, security of, claim against, or property or contractual right of any kind affording a source or influence over, any enterprise which the convicted defendant has established, operated, controlled, conducted, or participated in the conduct of, as a result of any such offense;

(c)   Any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection as a result of any such offense; and

(d)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a), (b), and (c).

Pursuant to Title 18, United States Code, Section 1963(m), any defendant so convicted shall forfeit substitute property, up to the

//

//

67

1  total value of the property described in the preceding paragraph if,

2  as the result of any act or omission of said defendant, the property

3  described in the preceding paragraph, or any portion thereof (a)

4  cannot be located upon the exercise of due diligence; (b) has been

5  transferred, sold to or deposited with a third party; (c) has been

6  placed beyond the jurisdiction of the court; (d) has been

7  substantially diminished in value; or (e) has been commingled with

8  other property that cannot be divided without difficulty.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 981(a)(1)(C), 924(d)(1) and 28 U.S.C. § 2461(c)]

1.     Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Two through Eighteen of this Indictment.

2.     Any defendant so convicted shall forfeit to the United States of America the following:

(a)     All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to any of the offenses;

(b)     All right, title, and interest in any firearm or ammunition involved in or used in any such offense and

(c)     To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.     Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence;

//

//

69

(b) has been transferred, sold to, or deposited with a third party;

(c) has been placed beyond the jurisdiction of the court; (d) has

been substantially diminished in value; or (e) has been commingled

with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 982]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of any defendant's conviction of the offenses set forth in any of Counts Twenty through Thirty-four and Forty of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

71

1                          FORFEITURE ALLEGATION FOUR

2              [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

3        1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States of America

5   will seek forfeiture as part of any sentence, pursuant to Title 18,

6   United States Code, Section 981(a)(1)(C) and Title 28, United States

7   Code, Section 2461(c), in the event of any defendant's conviction of

8   the offenses set forth in any of Counts Nineteen or Thirty-five

9   through Thirty-nine of this Indictment.

10       2.    Any defendant so convicted shall forfeit to the United

11  States of America the following:

12            (a)  All right, title and interest in any and all property,

13  real or personal, constituting, or derived from, any proceeds

14  traceable to any such offense; and

15            (b)  To the extent such property is not available for

16  forfeiture, a sum of money equal to the total value of the property

17  described in subparagraph (a).

18       3.    Pursuant to Title 21, United States Code, Section 853(p), as

19  incorporated by Title 28, United States Code, Section 2461(c), the

20  defendant so convicted shall forfeit substitute property, up to the

21  total value of the property described in the preceding paragraph if,

22  as the result of any act or omission of the defendant, the property

23  described in the preceding paragraph, or any portion thereof: (a)

24  cannot be located upon the exercise of due diligence; (b) has been

25  transferred, sold to or deposited with a third party; (c) has been

26  placed beyond the jurisdiction of the court; (d) has been

27  substantially diminished in value; or (e) has been commingled with

28  other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION FIVE

[26 U.S.C. § 7301 and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 26, United States Code, 7301, and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Forty-one through Forty-three of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a) Any property sold or removed by the defendant in fraud of the internal revenue laws, or with design to avoid payment of such tax, or which was removed, deposited, or concealed, with intent to defraud the United States of such tax or any part thereof;

(b) All property manufactured into property of a kind subject to tax for the purpose of selling such taxable property in fraud of the internal revenue laws, or with design to evade the payment of such tax;

(c) All property whatsoever, in the place or building, or any yard or enclosure, where the property described in subsection (a) or (b) is found, or which is intended to be used in the making of property described in subsection (a), with intent to defraud the United States of tax or any part thereof, on the property described in subsection (a);

(d) All property used as a container for, or which shall have contained, property described in subsection (a) or (b);

(e) Any property (including aircraft, vehicles, vessels, or

73

draft animals) used to transport or for the deposit or concealment of property described in subsection (a) or (b), or any property used to transport or for the deposit or concealment of property which is intended to be used in the making or packaging of property described in subsection (a); and

(f)  To the extent that such property is not available for forfeiture, a sum of money equal to the total value of the property described in this paragraph.

3.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

1  substantially diminished in value; or (e) has been commingled with

2  other property that cannot be divided without difficulty.

3                                        A TRUE BILL

4

5                                        /S/

6                                        Foreperson

7  JOSEPH T. MCNALLY
   Acting United States Attorney
8

9  *Lindsey Greer Dotson*

10 LINDSEY GREER DOTSON
   Assistant United States Attorney
11 Chief, Criminal Division

12 JOSHUA O. MAUSNER
   Assistant United States Attorney
13 Chief, Violent & Organized Crime
   Section
14

15 KEVIN J. BUTLER
   Assistant United States Attorney
16 Deputy Chief, Violent & Organized
   Crime Section

17 JENA A. MACCABE
   Assistant United States Attorney
18 Violent & Organized Crime Section

19

20

21

22

23

24

25

26

27

28