Craig A. Harbaugh (Cal Bar No. 194309)
Harbaugh Law, P.C.
360 E. 2nd Street, Suite 800
Los Angeles, California 90012
Telephone: (213) 986-8656
Facsimile:
Email: craig@harbaugh.law

Peter Johnson (Cal Bar No. 252542)
Peter Johnson Law, P.C.
407 N. Pacific Coast Hwy, 651
Redondo Beach, California 90277
Telephone: (310) 295-1785
Facsimile: (213) 319-2907
Email: peter@peterjohnsonlaw.com

Attorneys for Defendant
Eugene Henley

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EUGENE HENLEY<br><br>Defendant. | Case No. 2:25-cr-00211-FLA-1<br><br>DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY<br><br>Hearing Date: Friday, April 24, 2025<br>Time: 1:30 p.m.<br>Location: Courtroom 6B<br>Hon. Fernando L. Aenlle-Rocha |

Defendants Eugene Henley, by and through his counsels of record, Craig Harbaugh and Peter Johnson, Sylvester Robinson, by and through his counsel of record, Scott Pactor, and Mark Martin, by and through his counsel of record, Kristen

Richards, respectfully move this Court to exclude the four experts noticed by the Government.

This motion is based on this Notice, the attached Memorandum of Points and Authorities, the pleadings and records on file, transcripts in this case, and such further evidence and argument as the Court may permit at a hearing.

The undersigned, counsel of record for Mr. Henley, certifies that this brief contains 6,733 words, which does not comply with the Court's standing order. A separate Ex Parte Application to File Oversized Briefs is filed contemporaneously herewith.

DATED: March 27, 2026

Respectfully submitted,

*/s/ Craig A. Harbaugh*
CRAIG A. HARBAUGH

*/s/ Peter Johnson*
PETER JOHNSON
Attorneys for Eugene Henley, Jr.

*/s/ Scott Pactor*
SCOTT PACTOR
Attorney for Sylvester Robinson

*/s/ Kristen N. Richards*
KRISTEN N. RICHARDS
Attorney for Mark Martin

## TABLE OF CONTENTS


**I. INTRODUCTION .......... 1**

**II. FACTS .......... 1**

A. Kyle Tramonte .......... 1
B. Professor Ellen P. Aprill .......... 2
C. DNA Analyst .......... 3
1. The Government's Homicide Theory .......... 3
2. The DNA Report's Actual Findings .......... 3
3. The STRmix Methodology and Undisclosed Inputs .......... 4
D. Detective Choe .......... 4
1. Noticed Opinions .......... 4
2. Qualifications .......... 5

**III. LEGAL STANDARD .......... 5**

A. Rule 16 Expert Disclosure Requirements .......... 5
B. Rule 702 and Daubert: Four Requirements, No Presumption of .......... 6
Admissibility .......... 6
C. Qualifications Must Be Tethered to the Specific Opinions Offered .......... 7
D. Experience-Based Qualifications Do Not Validate Unreliable .......... 7
Conclusions .......... 7
E. Expert Opinion May Not Substitute for Proof of Charged Elements .......... 8
F. Confrontation Clause Limits .......... 8
G. Rule 403 Balancing and the Talismanic Significance of Expert Testimony .......... 9
H. The Government's Expert May Not Offer an Opinion on the .......... 9
Defendant's Mental State Under Rule 704(b) .......... 9

**IV. ARGUMENT .......... 9**

A. THE COURT SHOULD EXCLUDE TRAMONTE .......... 10
1. The Government's Disclosure Is a Structural Failure .......... 10
2. The Government Has Not Demonstrated Case-Specific Reliability Under Rule 702 .......... 11
3. Interpretive Overreach: "Obvious Movement" and "Remained .......... 11
Generally Together" .......... 11
4. Rule 705 Does Not Permit Postponing Disclosure Until Trial .......... 11
5. The Government Cannot Shift the Burden of Rule 16 Compliance 12
to the Defense .......... 12
6. Exclusion Is the Only Appropriate Remedy .......... 12
B. THE COURT SHOULD EXCLUDE APRILL .......... 12
1. The Proposed Testimony Is Unreliable, Does Not Fit the Elements, and Invades the Jury's Role .......... 13
2. Aprill Will Offer Impermissible Legal Conclusions .......... 13

3. HER OPINIONS REGARDING "INTENTIONAL DIVERSION" AND "LEGITIMATE OPERATIONAL REASON" VIOLATE RULE 704(B) .......... 14
4. TESTIMONY REGARDING IRS SANCTIONS SHOULD BE EXCLUDED UNDER RULES 401 AND 403 .......... 14
5. APRILL'S DISCLOSURE IS DEFICIENT UNDER RULE 16 .......... 14
6. ANY PERMITTED TESTIMONY MUST BE STRICTLY LIMITED .......... 14
C. THE GOVERNMENT'S DNA TESTIMONY IS INADMISSIBLE .......... 15
1. THE "UNINFORMATIVE" RESULTS ARE IRRELEVANT. .......... 15
2. THE TESTIMONY MUST BE EXCLUDED UNDER RULE 403. .......... 15
3. THE "WEATHER" TESTIMONY LACKS A RELIABLE BASIS. .......... 16
a. The Government Disclosed No Methodology .......... 16
b. DNA Is Highly Resilient to Environmental Factors .......... 17
c. The Weather Theory Is Contradicted by the Expert's Own Findings .......... 17
4. THE GOVERNMENT'S DISCLOSURE VIOLATES RULE 16 .......... 17
**V. THE PROPOSED GANG-PROFILE TESTIMONY IS IRRELEVANT AND INADMISSIBLE. .......... 18**
A. The Gang Profile Narrative Is Irrelevant to the "Big U Enterprise" and Unfairly Prejudicial. .......... 18
B. Ermias Joseph Asghedom (Nipsey Hussle) Must Be Excluded. .......... 19
C. The Government Has Failed to Establish Choe is Qualified. .......... 20
D. Proposed "Slang" Testimony Violates Rule 16, Fails Rule 702, and .......... 21
Improperly Usurps the Jury's Role. .......... 21
**VI. CONCLUSION .......... 22**

# TABLE OF AUTHORITIES

## Cases

*Colombo v. Palo Alto Unified Sch. Dist.*,
2025 U.S. Dist. LEXIS 262255, (N.D. Cal. Dec. 18, 2025) .......... 6

*Commonwealth v. Barnett*,
482 Mass. 632, 641–42 (2019) .......... 15, 16

*DA's Office v. Osborne*,
557 U.S. 52, 62 (2009) .......... 15

*Daubert v. Merrell Dow Pharm.*,
509 U.S. 579, 592 n.10 (1993) .......... 6, 9

*Daubert v. Merrell Dow Pharms., Inc.*,
43 F.3d 1311, 1316 (9th Cir. 1995) (Daubert II) .......... 7, 8, 13, 17

*Deloney v. State*,
938 N.E.2d 724, 730 (Ind. Ct. App. 2010) .......... 15

*Diaz v. United States*,
602 U.S. 526, 534–35 (2024) .......... 9

*Engilis v. Monsanto Co.*,
151 F.4th 1040, 1049 (9th Cir. 2025) .......... 6

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136, 146 (1997) .......... 7, 11

*Gen. Elec. Co.*,
522 U.S. at 146 .......... 16

*Jones v. United States*,
933 F.Supp. 894, 900 (N.D. Cal. 1996) .......... 8

*Lust v. Merrell Dow Pharms., Inc.*,
89 F.3d 594, 598 (9th Cir. 1996) .......... 6

*McDaniel v. Brown*,
558 U.S. 120, 136 (2010) .......... 15

*Messick v. Novartis Pharm. Corp.*,
747 F.3d 1193, 1196 (9th Cir. 2014) .......... 8

*Mullins v. Premier Nutrition Corp.*,
178 F.Supp.3d 867, 900 (N.D. Cal. 2016) .......... 7

*People v. Holder*,
2024 Cal. App. Unpub. LEXIS 7014, at *5–6 (Nov. 5, 2024). .......... 20

*People v. Marks*,
2015 COA 173 (2015)–28 .......... 15

*Smelser v. Norfolk Southern Ry. Co.*,
105 F.3d 299, 303 (6th Cir. 1997) .......... 7

*Smith v. Arizona*,
602 U.S. 779, 783 (2024) .......... 8

*State v. Gourdin*,
549 P.3d 685, 707–10 (Utah Ct. App. 2024) .......... 16

*United States v. Benson*,
941 F.2d 598, 604 (7th Cir. 1991) .......... 7

*United States v. Bonds*,
12 F.3d 540, 567-68 (6th Cir. 1993) .......... 16

*United States v. Burgos-Lopez*,
2026 U.S. Dist. LEXIS 4050, at *11 (D. Ariz. Jan. 9, 2026) .......... 5, 6, 17, 18

*United States v. Cerna*,
No. 08-cr-0730-WHA, 2010 WL 2347406, at *5 (N.D. Cal. June 8, 2010) .......... 8

*United States v. Cummings*,
No. 23-3016, 2025 WL 179645, at *1–2 (9th Cir. June 5, 2025) .......... 9

*United States v. Frazier*,
387 F.3d 1244, 1263 (11th Cir. 2004) .......... 9

*United States v. Freeman*,
498 F.3d 893, 905 (9th Cir. 2007) .......... 8, 22

*United States v. Gomez*,
6 F.4th 992, 1006 (9th Cir. 2021) .......... 19

*United States v. Hankey*,
203 F.3d 1160, 1172 (9th Cir. 2000) .......... 19

*United States v. Hicks*,
103 F.3d 837, 847 (9th Cir. 1996) .......... 21

*United States v. Moore*,
No. 3:20-cr-00474-IM, 2021 U.S. Dist. LEXIS 231874 .......... 19

*United States v. Morales*,
108 F.3d 1031, 1037 (9th Cir. 1997) .......... 14

*United States v. Nelson*,
No. 17-cr-00533-EMC-1, 2021 U.S. Dist. LEXIS 5087, at *21 (N.D. Cal. Jan. 8, 2021) .......... 8

*United States v. Olivas*,
150 F.4th 1107, 1115 (9th Cir. 2025) .......... 9

*United States v. Reyes-Castillo*, No. 2:19-cr-103-GMN-MDC, 2025 U.S. Dist. LEXIS 78054, at *18 (D. Nev. Apr. 23, 2025) .......... 7

*United States v. Tillman*,
No. 23-cr-158 (SRN/TNL), 2024 U.S. Dist. LEXIS 29969 .......... 16

*United States v. Valencia-Lopez*,
971 F.3d 891, 898 (9th Cir. 2020) .......... 7, 13

*United States v. Weitzenhoff*,
35 F.3d 1275, 1287 (9th Cir. 1993) .......... 14

STATUTES

18 U.S.C. § 1343 .......... 3

18 U.S.C. § 666 .......... 3

26 U.S.C. § 4958 .......... 3

26 U.S.C. § 501(c)(3) .......... 3

## Other Authorities

California Corporations Code § 5231 .......... 3

IRS doctrine. Section 666 .......... 15

Janine Helmus et al., Legal Med. 137 (2018) .......... 19

Justin Tinsley, *How social media and rap podcasts became an invaluable tool for police*, ANDSCAPE (Mar. 20, 2025) .......... 22

S. Lund & J. Dissing, Surprising stability of DNA in stains at extreme humidity and temperature, 1261 Int'l Cong. Ser. 616 (2004) .......... 19

## Rules

Fed. R. Crim. P. 16 .......... passim

Fed. R. Evid. 104 .......... 1, 25

Fed R. Evid. 402 .......... 10, 21

Fed. R. Evid. 403 .......... passim

Fed. R. EvId. 702 .......... passim

Fed. R. Evid. 703 .......... 2

Fed. R. Evid. 704 .......... 1, 11, 12, 16

Fed. R. Evid. 705 .......... 2, 3, 13

# I. INTRODUCTION

The Government disclosed four expert witnesses—Kyle Tramonte, Ellen P. Aprill, Leah Groveman, and Nehemiah Choe—whose combined testimony would replace expert narrative for the jury's fact-finding on virtually every contested element. Although the Government identified what these witnesses intend to say, it has not adequately disclosed how they reached those conclusions, what reliable methodology supports them, or why their opinions satisfy the Federal Rules of Evidence.

Each disclosure suffers from core defects: Rule 16 noncompliance, insufficient foundation and opinions that risk unfair prejudice and encroachment on the jury's role. Several opinions cross the line into prohibited legal conclusions or ultimate-issue testimony concerning Mr. Henley's mental state.

This motion is to enforce the gatekeeping function required so a defendant is not convicted on the perceived authority of experts. The defense moves to exclude these witnesses or, in the alternative, requests a reliability hearing outside the presence of the jury.

# II. FACTS

## A. Kyle Tramonte

On March 13, 2026, the government disclosed its intent to call Kyle Tramonte as an expert witness in "Communication Detail Record and Geolocation Analysis." (Ex. 169 at 1[1].)

According to the disclosure, Tramonte will testify regarding communication detail records ("CDRs"), network engineering records, and cell phone mapping software. (*Id.* at 2.) The government sets forth conclusions about the movement and location of cellular phones linked to Mr. Henley, Mr. Robinson, and the deceased, R.W. (*Id.* at 2–7.) For example, the disclosure states that:

---

[1] Exhibits submitted in support of this motion are a continuation of exhibits previously filed with this Court. All exhibits referenced herein are included in the new exhibit list and are being filed contemporaneously with this motion.

- Certain devices traveled from South Los Angeles to Las Vegas on January 23, 2021;
- A device exhibited "obvious movement" at approximately 3:15 a.m. on January 24, 2021 (*Id.* at 3, ¶ 2);
- "It became obvious the device was in a pattern of traveling south" on January 25, 2021 (*Id.* at 4, ¶ 9);
- Location patterns "suggest both devices remained generally together throughout" a six-day period in March 2025 (*Id.* at 7, ¶ 25).

These opinions rely on "network engineering records," "Timing Advance data," "network estimated locations," a "'CDR Mediations' report" (*Id.* at 4), and mapping software. (*Id.* at 6–7.) But the government fails to specify the records, analytic parameters, criteria for "general vicinity," proximity thresholds, or margin of error for these location inferences. Despite given notice of "Tramonte's report" and "intent to use illustrations as [Rule 106] summaries," (*Id.* at 7.), no report or referenced illustrations were produced.

**B. Professor Ellen P. Aprill**

On March 17, 2026, the government disclosed its intention to call Professor Ellen P. Aprill as an expert witness at trial. (Ex. 170 at 1.) The notice covers "nonprofit organizations, tax laws associated with such organizations, and the rules and requirements of creating, maintaining, and documenting such organizations." (*Id.*)

She is expected to testify on eleven areas, including: the legal requirements under 26 U.S.C. § 501(c)(3); private inurement; fiduciary responsibilities; federal grant compliance; IRS Form 990; available IRS sanctions, including intermediate sanctions, revocation of tax-exempt status; the taxability of embezzled or diverted funds; the effect of a "substantial illegal purpose"; donor restrictions on charitable contributions; fund accounting requirements for restricted grants; and California Corporations Code § 5231. (*Id.* at 1–2.) Because Professor Aprill has never testified as an expert (Id. at 4), there is no prior judicial evaluation of her methodology or reliability in criminal

proceedings.

The Indictment in this case charges wire fraud under 18 U.S.C. § 1343 and embezzlement concerning an organization receiving federal funds under 18 U.S.C. § 666 require proof of a scheme to defraud and intentional misapplication or conversion of funds. They do not involve, much less require proof of tax compliance, reporting obligations, intermediate sanctions, revocation standards, or state fiduciary duties.

**C. DNA Analyst**

On March 19, 2026, the Government disclosed Forensic Scientist III Leah Groveman as a trial expert. Ex. 171 at 1.) Ms. Groveman will testify regarding "DNA analysis and collection," specifically the conclusions in her March 22, 2023 Report of Examination. (Ex.172.) Groveman will also testify regarding "the frequency with which DNA is recovered from evidence and the effect of environmental factors on recovery, processing and analysis." (*Id.* at 2.)

**1. The Government's Homicide Theory**

The Government alleges that Mr. Henley shot R.W. and "dragged his body into the desert." (Ex. 168 ¶ 46.) The Government alleges DNA collected from R.W.'s "ankle/sock area" is "consistent with the direction that R.W. was dragged." (*Id.* ¶ 61.) It further asserts Mr. Robinson was "excluded," while Mr. Henley's DNA was "inconclusive such that he could not be excluded." (*Id.* ¶ 62.)

**2. The DNA Report's Actual Findings**

The DNA report is materially inconsistent with this narrative:

- Item 6.1.1 (Black Socks): Both Mr. Henley and Mr. Robinson are affirmatively EXCLUDED. (*Id.* at 3.)
- Item 5.1.1 (Left Shoe): Both Mr. Henley (LR ≈ 0.124) and Mr. Robinson (LR ≈ 0.0991) are "[u]ninformative." (*Id.* at 2.)
- Item 5.2.1 (Right Shoe): Both Mr. Henley (LR ≈ 1.30) and Mr. Robinson (LR ≈ 5.60) are "[u]ninformative." (*Id.* at 3.)
- Item 6.2.1 (Under Armour Sock): Both Mr. Henley (LR ≈ 0.0292) and Mr.

Robinson (LR ≈ 0.326) are "[u]ninformative." (*Id.* at 3.)

The DNA Report defines "uninformative" as a result that "does not provide sufficient support for whether [the individuals] are included or excluded." (*Id.* at 2.)

**3. The STRmix Methodology and Undisclosed Inputs**

The Report states likelihood ratios ("LR") were generated using STRmix software based on undisclosed "pair of propositions" and "assumptions" regarding the number of contributors. (*Id.* at 5). The Government fails to identify the propositions or assumptions applied for any noticed opinions.

**D. Detective Choe**

**1. Noticed Opinions**

On March 19, 2026, the Government disclosed Detective Nehemiah Choe as its gang expert. (Ex. 173 at 1.) Choe will testify on the "history, structure, membership, rules, and activities" of the Rollin' 60s. (*Id.* at 1–2.) He will testify the gang has "over 1,000 members" and that members "engage in these activities for the purpose of enriching themselves and the Rollin' 60s and to maintain control over Rollin' 60s territory." (*Id.* at 2.), including "hierarchy and leadership structure," of "OG['s]" "whose seniority confers authority to sanction or prohibit conduct by young members" and can "direct others." (*Id.* at 2-3.) Choe will also testify that "younger generations... carry out "drug trafficking," "extortion," and "retaliatory shootings." (*Id.* at 3.)." (*Id.*)

Further, Choe will testify how "Los Angeles gang culture... has historically intersected with the hip-hop and entertainment industry" to "extend gang influence, extort artists and promoters, and launder proceeds." (*Id.* at 2.) He will testify "Nipsey Hussle was a well-known, self-avowed, and proud member" and "defendant Eugene 'Big U' Henley was known as his manager and another famous Rollin' 60s Crip leader." (*Id.* at 2.)

Finally, Choe will interpret terms including "blower," "put in work," "violate," and "lick." (*Id.* at 3.). But Choe does not identify specific exhibits or methodology

used for his interpretations.

**2. Qualifications**

Choe has been an officer nine years, with of experience “4 years as a patrol officer assigned to Rollin’ 60s territory” and “4 years” with the “77th Gang Enforcement Detail” to “monitor, and collect intelligence on the Rollin’ 60s on a daily basis.” (*Id.*) The disclosure fails to specify the number or nature of his interviews or field contacts or how his background establishes either knowledge of the Rollin’ 60s or the hip-hop industry.

## III. LEGAL STANDARD

### A. Rule 16 Expert Disclosure Requirements

The 2022 amendments to Rule 16 aim “to ensure enforceable deadlines” and to provide “a fair opportunity . . . to meet the other side’s evidence.” Fed. R. Crim. P. 16 advisory committee’s note to 2022 amendment; *United States v. Burgos-Lopez*, 2026 U.S. Dist. LEXIS 4050, at *11 (D. Ariz. Jan. 9, 2026). The Government must disclose its expert testimony “sufficiently before trial to provide a fair opportunity . . . to meet the government’s evidence.” Fed. R. Crim. P. 16(a)(1)(G)(ii). “Last-minute disclosures . . . are no longer permitted.” *Burgos-Lopez*, 2026 U.S. Dist. LEXIS 4050, at *11 n.5.

The demanding rule requires a “complete statement of all opinions “ and “the bases and reasons for them.” Fed. R. Crim. P. 16(a)(1)(G)(iii). A disclosure is “plainly insufficient” if it identifies a “hypothetical range of conclusions,” *Burgos-Lopez*, 2026 U.S. Dist. LEXIS 4050, at *4 , or a “general assertion about a topic.” United States v. Biden, No. 2:23-cr-00599-MCS-1, 2024 LX 97041, at *5 (C.D. Cal. Aug. 27, 2024). The Government cannot satisfy its obligation by simply citing “training, education, experience, and expertise” or describing a methodology. *Burgos-Lopez*, 2026 U.S. Dist. LEXIS 4050, at *8 (rejecting as deficient disclosure as “a conclusion masquerading as reasoning”). Discussing a general process is not enough; the Government must disclose the expert’s actual application of methodology to the case facts. *Id.* at *7, *9.

Exclusion is warranted where a late or deficient disclosure prejudices the

defendant's ability to "effectively cross-examine the expert" or "make informed decisions about whether [to] invest limited resources in a rebuttal... expert." *Burgos-Lopez*, 2026 U.S. Dist. LEXIS 4050, at *14–15. A defendant need not seek a continuance to remedy the Government's violation, as a "Hobson's choice" between being unprepared or waiving speedy trial rights is "incompatible with Rule 16." *Id.* at *17-18 (granting motion to exclude Government expert based upon deficient notice).

### B. Rule 702 and Daubert: Four Requirements, No Presumption of Admissibility

To admit expert testimony, the Government must satisfy four independent requirements: (1) the expert must be qualified; (2) the expert's methodology must be reliable; (3) the testimony must assist the trier of fact; and (4) the testimony must survive Rule 403 balancing, such that its probative value is not substantially outweighed by the risk of unfair prejudice or jury confusion. Fed. R. Evid. 702. The proponent bears the burden as to each requirement. *Id.* Failure to satisfy any single prong requires exclusion.

The 2023 amendment to Rule 702 requires the proponent demonstrate it is "more likely than not" that the proffered testimony meets each requirement. Fed. R. Evid. 702; *Colombo v. Palo Alto Unified Sch. Dist.*, 2025 U.S. Dist. LEXIS 262255, at *4-5 (N.D. Cal. Dec. 18, 2025). "[T]here is no presumption in favor of admission." *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025).

The proponent "must always establish" admissibility "by a preponderance of the evidence." *Id.* at 1050; *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592 n.10 (1993). Rule 702 requires "that an expert's testimony both rests on a reliable foundation and is relevant." *Daubert*, 509 U.S. at 597. The district court "cannot abdicate its role as gatekeeper" nor "delegate that role to the jury." *Engilis*, 151 F.4th at 1050 (internal citations omitted). While "shaky" evidence may sometimes be attacked via cross-examination, it must first be found "admissible" by the trial court; only then is the proponent "entitled to have the jury decide upon its credibility." *Id.* The proponent

"is not entitled to bolster evidence with the aura of scientific or specialized expertise if the jury is capable of understanding. . . without an expert." *United States v. Reyes-Castillo*, No. 2:19-cr-103-GMN-MDC, 2025 U.S. Dist. LEXIS 78054, at *18 (D. Nev. Apr. 23, 2025).

### C. Qualifications Must Be Tethered to the Specific Opinions Offered

"An expert's opinion is helpful only to the extent . . . [it] is, an opinion informed by the witness' expertise[ ] rather than simply an opinion broached by a purported expert." *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991). "Even the most qualified expert may not offer any opinion on any subject; the expert's opinion must be grounded in his or her personal 'knowledge, skill, experience, training, or education.'" *Mullins v. Premier Nutrition Corp.*, 178 F.Supp.3d 867, 900 (N.D. Cal. 2016). Courts examine "not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997).

### D. Experience-Based Qualifications Do Not Validate Unreliable Conclusions

Reliability is the "lynchpin" of the Rule 702 inquiry, and court's may not "abdicate completely its responsibility to do so." *United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020). Reliability is "more, not less, important" for "experience-based" testimony. *Id.* Dismissing a challenge as going to weight "is not a reliability determination" and is an "abdication." *Id.* at 99.

The proponent "must show . . . sound science and this will require some objective, independent validation." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) (*Daubert II*). "[T]he expert's bald assurance of validity is not enough." *Daubert II*, 43 F.3d at 1316. Without a clear link, there is "too great an analytical gap." *Valencia-Lopez*, 971 F.3d at 901 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Expert testimony must also fit the inquiry. Courts "must look to the governing substantive standard," *Daubert II*, 43 F.3d at 1320, and the testimony must "logically advance . . . a material aspect of the proposing party's case." *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014). This requirement is stricter than Rule 402, due to the inherent risks of expert testimony. *Jones v. United States*, 933 F. Supp. 894, 900 (N.D. Cal. 1996) ("The 'fit' requirement pertains primarily to the relevance of the evidence under Fed. R. Evid. 402, but also recognizes the special dangers inherent in scientific expert testimony.").

**E. Expert Opinion May Not Substitute for Proof of Charged Elements**

"No one should be convicted . . . based on an opinion of [an expert] that an element of an offense was committed when that element is amenable to ordinary fact proof." *United States v. Cerna*, No. 08-cr-0730-WHA, 2010 U.S. Dist. LEXIS 62907, at *20 (N.D. Cal. Jun. 8, 2010); *Reyes-Castillo*, No. 2:19-cr-00103-GMN-MDC. Expert testimony may not "supply opinions in place of hard facts . . ." *Id.* at *20. Courts have been "particularly cautious" when matters are "amenable to ordinary fact proof." *United States v. Nelson*, No. 17-cr-00533-EMC-1, 2021 U.S. Dist. LEXIS 5087, at *21 (N.D. Cal. Jan. 8, 2021).

**F. Confrontation Clause Limits**

The Confrontation Clause is violated when an expert presents testimonial hearsay "in the guise of an expert opinion," rather than "to explain a bona fide expert opinion." *United States v. Reyes Vera*, 770 F.3d 1232, 1238 (9th Cir. 2014); *United States v. Freeman*, 498 F.3d 893, 905 (9th Cir. 2007) ("when a case agent/expert strays from the scope of his expertise, . . . the witness may also run afoul of the Sixth Amendment Confrontation Clause.") This occurs when the expert acts as "a conduit or transmitter for testimonial hearsay." *Id.* at 1237. This includes "convey[ing] an absent analyst's statements in support of his opinion." *Smith v. Arizona*, 602 U.S. 779, 783 (2024).

### G. Rule 403 Balancing and the Talismanic Significance of Expert Testimony

"Expert evidence can be both powerful and quite misleading." *Daubert*, 509 U.S. at 595. It "may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004).

### H. The Government's Expert May Not Offer an Opinion on the Defendant's Mental State Under Rule 704(b)

Rule 704(b) bars expert opinions in a criminal case about whether the defendant had a mental state constituting an element. *Diaz v. United States*, 602 U.S. 526, 534–35 (2024). Experts may not "substitute [their] judgment for the jury's" on this dispositive issue. *United States v. Olivas*, 150 F.4th 1107, 1115 (9th Cir. 2025); *United States v. Cummings*, No. 23-3016, 2025 U.S. App. LEXIS 13777, at *1–2 (9th Cir. June 5, 2025) (finding Rule 704(b) violated where an officer "repeatedly and unequivocally testified that Cummings intended" to commit the charged offense). An opinion is improper if it "includes a conclusion on that precise topic." *Olivas*, 150 F.4th at 1116 (quoting *Diaz*, 602 U.S. at 537).

Further, "expert witnesses cannot testify as to issues of law." *United States v. Shaw*, No. 22-cr-00105-BLF-1, 2023 U.S. Dist. LEXIS 60066, at *8 (N.D. Cal. Apr. 5, 2023); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (quoting *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002)) ("That said, 'an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law.'").

## IV. ARGUMENT

Each government expert disclosure suffers from the same deficiency: none provides the "bases and reasons" for conclusions as required by Rule 16(a)(1)(G). Beyond that, the disclosures of Tramonte and Aprill present independent grounds for

exclusion under Rule 702's reliability and fit requirements, and Professor Aprill's disclosure additionally violates Rule 704(b)'s prohibition on expert mental-state opinions and legal conclusions. The disclosures of Aprill and Choe share a Rule 403 problem: both seek to cloak straightforward inferences in academic or law enforcement authority, substantially outweighing any probative value. The Court should exclude or hold an evidentiary hearing for all four experts.

## A. THE COURT SHOULD EXCLUDE TRAMONTE

### 1. The Government's Disclosure Is a Structural Failure

The government's disclosure is procedurally deficient. It discloses conclusions but omits:

- Specific records tied to each opinion;
- Analytic methodology used to interpret those records;
- Software used, parameters or settings employed;
- Criteria used to define terms such as "general vicinity," "obvious movement," or "remained generally together";
- Margin-of-error ranges applied;
- "CDR Mediations" report it explicitly references;
- "[I]llustrations and animations";
- Tower database, sector azimuth information, propagation assumptions, confidence intervals, or any engineering criteria used to convert network data into geographic conclusions; and
- Tramonte's own "report."

Withholding these materials frustrates Rule 16 and prevents meaningful reliability testing. This matters because the disclosure assigns devices to specific addresses while acknowledging that those addresses are points of reference and not exact locations.

### 2. The Government Has Not Demonstrated Case-Specific Reliability Under Rule 702

Rule 702 requires more than credentials; it requires that the expert "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(d). Because the government withheld Tramonte's analytic process, the Court cannot determine whether Rule 702(d) has been satisfied. That is *ipse dixit*, not admissible methodology. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

### 3. Interpretive Overreach: "Obvious Movement" and "Remained Generally Together"

Tramonte claims "it became obvious the device was in a pattern of traveling south" (Ex. 169 at 4) and that location patterns "suggest both devices remained generally together throughout" a six-day period (*Id.* at 7). These are interpretive characterizations beyond proper CDR analysis.

CDR data does not measure physical movement; it reflects network connections within coverage areas. Two devices connecting to the same tower or sector do not establish that they were physically together. They establish only that they were within overlapping coverage footprints.

Characterizing movement as "obvious" or devices as "remaining together" invades the jury's role. If the movement is truly "obvious," it requires no expert gloss and is not helpful. Further, phrases like "consistent with" obscures the analytical gap between coverage data and physical proximity.

### 4. Rule 705 Does Not Permit Postponing Disclosure Until Trial

Rule 705 does not eliminate Rule 16's pretrial disclosure requirements. Waiting until direct examination would defeat the Court's gatekeeping function and cause concrete prejudice. Rule 705 does not authorize trial by ambush.

The same applies to animations or summaries: if those materials depict movement, direction, or proximity, their assumptions must be disclosed before trial

because undisclosed expert reasoning cannot be smuggled in through demonstratives.

**5. The Government Cannot Shift the Burden of Rule 16 Compliance to the Defense**

The Government concludes its notice by directing the defense to reach out "if you believe that the notice that you have received provides inadequate notice." (Ex. 169 at 10.) But Rule 16 does not require the defense to identify deficiencies in order to Trigger compliance.[2] It imposes an affirmative, non-delegable obligation on the prosecution. In a case with than one million items of discovery, a generic reference to "historic cellular records" is a functional nondisclosure. The defense should not be required to sift through massive discovery to try to identify Tramonte's selected data.

**6. Exclusion Is the Only Appropriate Remedy**

The violation here is structural and incurable. Any attempt by the Government to supply the withheld materials in its opposition cannot cure the prejudice. The government has had years to prepare; the prejudice from its dereliction should not shift to the defense. Because the government has failed to satisfy its affirmative obligations under Rule 16 and has not demonstrated case-specific reliability under Rule 702, total exclusion is warranted.

**B. THE COURT SHOULD EXCLUDE APRILL**

The government seeks to introduce a law professor to characterize transfer patterns as "consistent with intentional diversion" and lacking any "legitimate operational reason," while also instructing the jury on IRS revocation standards and intermediate sanctions that are not elements of the charged offenses. The crimes at

---

[2] To be sure, the defense, repeatedly faced with delinquent expert notices from the United States Attorney's Office in the past, provided a clear letter to the prosecutor delineating their disclosure obligation under Rule 16. *See* Ex 174 ("For each witness the government intends to call under Federal Rules of Evidence 702, 703, or 705, the Rule 16 disclosure must include: "A complete statement of all opinions the government will elicit from the witness in its case-in-chief" and "[t]he bases and reasons for those opinions").

issue—wire fraud and embezzlement—require proof of fraudulent intent and misapplication of funds. They do not incorporate tax governance or regulatory standards. Rule 702 does not permit substitution of academic norms for elements Congress enacted, nor allowing an expert to offer legal conclusions, much less supply the jury's inference of intent. None of Aprill's testimony is admissible.

**1. The Proposed Testimony Is Unreliable, Does Not Fit the Elements, and Invades the Jury's Role**

The government identifies no accounting standard or forensic methodology, citing only Aprill's "decades-long practice." Ex. 175 at 2. Experience does not replace the requirement of articulating how it leads to the conclusion. *Daubert II*, 43 F.3d at 1316. Aprill is a scholar, not a forensic accountant. Where an expert offers conclusions about intent without objective criteria, the deficiency is one of admissibility. *Valencia-Lopez*, 971 F.3d at 900–01.

The charged statutes require proof of fraudulent intent—not compliance with IRS doctrine. Section 666 does not incorporate tax standards as a measure of liability. Authorization is a factual inquiry into actual authority; it is not a normative inquiry into IRS best practices. The baseline for "misapplication" is the authority actually granted, not what a tax scholar considers advisable. None of her testimony is relevant or helpful to the jury's determination.

**2. Aprill Will Offer Impermissible Legal Conclusions**

In addition, the Government's disclosure indicates Aprill will testify that certain conduct is "legally binding" and "flatly prohibit[ed]." Such testimony crosses the line from permissible expert assistance into impermissible legal instruction. An expert may not tell the jury what the law is or apply legal standards to the facts—that role belongs exclusively to the Court and jury. See *Hangarter*, 373 F.3d at 1016; *Shaw*, 2023 U.S. Dist. LEXIS 60066, at *8. *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993) ("It is well settled, however, that the judge instructs the jury in the law.")

Allowing Aprill to frame conduct in terms of legal prohibition would improperly substitute her judgment for the Court's instructions and the jury's verdict. Her legal conclusions are *per se* inadmissible.

**3. Her Opinions Regarding "Intentional Diversion" and "Legitimate Operational Reason" Violate Rule 704(b)**

Aprill applies a framework to characterize to improperly opine regarding Mr. Henley's intent. "Intentional diversion" is a conclusion about purpose. Rule 704(b) cannot be avoided by indirect phrasing. Where testimony convey the defendant acted with the requisite intent, the prohibition applies. *United States v. Morales*, 108 F.3d 1031, 1037 (9th Cir. 1997). Similarly, testimony of "no legitimate operational reason" directly bears on the Mr. Henley's state of mind and is equally inadmissible.

**4. Testimony Regarding IRS Sanctions Should Be Excluded Under Rules 401 and 403**

Evidence concerning IRS sanctions, revocation standards, or the "substantial illegal purpose" doctrine does not make it more or less probable that the defendant possessed the specific intent required. Fed. R. Ev *Id.* 401. Permitting such testimony would create a mini-trial on IRS governance doctrine. That conflation cannot be fully mitigated by instruction because the terminology itself carries a criminal connotation that cannot be ignored.

**5. Aprill's Disclosure Is Deficient Under Rule 16**

Rule 16 requires a complete statement of opinions and the bases and reasons for them. The disclosure identifies no specific materials reviewed and no articulated standards applied to define "close-in-proximity" or distinguish legitimate from illegitimate transfers. Without disclosure of the materials reviewed and standards applied, neither the defense nor the Court can meaningfully assess reliability under Rule 702.

**6. Any Permitted Testimony Must Be Strictly Limited**

If admitted, Aprill should be confined to neutral background regarding §

501(c)(3) and prohibited from: (1) characterizing transfer as "diversion," "embezzlement," "prohibited," or lacking a "legitimate reason"; (2) opining on intent, authorization, or purpose; (3) testifying regarding IRS sanctions or "substantial illegal purpose"; and (4) offering legal conclusions.

### C. THE GOVERNMENT'S DNA TESTIMONY IS INADMISSIBLE

#### 1. The "Uninformative" Results Are Irrelevant.

The DNA testimony fails on relevancy. Three results are labeled "[u]ninformative," meaning they "do . . . not provide sufficient support for whether [the individuals] are included or excluded . . . ." (Ex. 172 pp. 2-3). Because such results "provide no information whatsoever as to the source of the DNA," *Commonwealth v. Barnett*, 482 Mass. 632, 641–42 (2019), they fail to "meet the minimum relevancy standards." *People v. Marks*, 374 P.3d 518, 523 (Colo. App. 2015 (2015); *see also Deloney v. State*, 938 N.E.2d 724, 730 (Ind. Ct. App. 2010) (holding where an analyst cannot exclude a defendant and cannot provide statistical meaning to the result, the testimony "lack[s] relevancy and should not [be] admitted.").

The Complaint false characterization cannot salvage these irrelevant results. It incorrectly asserts Robinson was "excluded," and Henley's result was "inconclusive such that he could not be excluded." (Complaint ¶ 62). But the report states the testing "does not provide sufficient support" for inclusion or exclusion. (Ex. 172 at 2). For the fourth item—the black socks—both men are excluded (*Id.* at 3). While the defense does not oppose introducing the single result excluding both men, the Rules bar presenting scientifically neutral results.

#### 2. The Testimony Must Be Excluded Under Rule 403.

Even if the uninformative results were relevant, prejudice substantially outweighs their minimal probative value. The Supreme Court has cautioned that "DNA testing can provide powerful new evidence unlike anything known before," *DA's Office v. Osborne*, 557 U.S. 52, 62 (2009), and it is "important that it be presented in a fair and reliable manner" given its unique "persuasiveness . . . in the eyes of the

jury." *McDaniel v. Brown*, 558 U.S. 120, 136 (2010). The Government intends to exploit ambiguity by framing results as "inconclusive such that he could not be excluded." (Complaint ¶ 62). This invites the jury to treat a neutral "non-exclusion" as incriminating, contradicting the finding of "insufficient support." (172 at 2).

DNA carries an "aura of reliability," *United States v. Bonds*, 12 F.3d 540, 567-68 (6th Cir. 1993) and "has the potential to confuse and mislead jurors due to its scientific nature." *United States v. Tillman*, No. 23-cr-158 (SRN/TNL), 2024 U.S. Dist. LEXIS 29969, at *22 (D. Minn. Feb. 22, 2024). The risk is acute where the prosecution "intends to try to use that 'inconclusive' [DNA] evidence in its favor." *State v. Gourdin*, 549 P.3d 685, 707–10 (Utah Ct. App. 2024). NIST warns DNA results "could mislead . . . if used in isolation." Nat'l Inst. of Standards & Tech., Forensic DNA Interpretation and Human Factors: Improving Practice Through a Systems Approach § 5.3, at 116 (NIST IR 8503, 2024), ttps://doi.org/10.6028/NIST.IR.8503. The Government's own expert notes "the presence or absence of a DNA profile cannot answer questions with regards to the timeframe and/or circumstances . . . ." (172 at 4), Notes and Disclaimers ¶ 5). This disclaimer undermines the narrative. If any reference is permitted, the jury must be instructed: "Where DNA results are deemed inconclusive, the results provide no information whatsoever as to the source of the DNA. Therefore, inconclusive results may not be considered for any identification purpose." *Barnett*, 482 Mass. at 641–42, 125 N.E.3d at 733 (fn. 8).

**3. The "Weather" Testimony Lacks a Reliable Basis.**

The Government's anticipated argument that environmental exposure caused degradation does not cure the relevancy defect; it creates a new one under Rule 702.

**a. The Government Disclosed No Methodology**

To testify environmental conditions caused degradation, the expert must disclose: (1) specific meteorological conditions; (2) duration of exposure; and (3) a validated framework connecting those conditions to STRmix outcomes. A conclusory assertion that weather caused degradation is precisely the *ipse dixit* reasoning rejected.

*Gen. Elec. Co.*, 522 U.S. at 146. The Government must show "some objective, independent validation of the expert's methodology," and "[t]he expert's bald assurance of validity is not enough." *Daubert II*, 43 F.3d at 1316.

**b. DNA Is Highly Resilient to Environmental Factors**

Validated studies demonstrate DNA is stable. Forensic literature confirms DNA remains recoverable from clothing submerged for up to two weeks. *See* Janine Helmus et al., Legal Med. 137 (2018); S. Lund & J. Dissing, Surprising stability of DNA in stains at extreme humidity and temperature, 1261 Int'l Cong. Ser. 616 (2004) (even under extreme humidity and heat (up to 65°C), air-dried biological stains have shown "surprising stability" for months.).

**c. The Weather Theory Is Contradicted by the Expert's Own Findings**

The analyst designated the victim an "Assumed Contributor" on each item, meaning his profile was sufficiently present to serve as the analytical baseline. (172 at 2-3). Item 6.1.1 was of sufficient quality to submit to CODIS—though later removed for returning too many non-probative hits. (*Id.* at 3). A profile matching an unmanageable number of individuals is not degraded beyond use; it is a definitive result that excludes Mr. Henley. The Government cannot claim samples were too degraded to identify Mr. Henley while maintaining they were intact enough to identify the victim and generate a CODIS-quality profile.

**4. The Government's Disclosure Violates Rule 16**

Even if the Government overcomes these substantive bars, its failure to satisfy Rule 16's disclosure requirements establishes an independent basis for exclusion. A disclosure is "plainly insufficient" if it fails to indicate "what opinion or conclusions will be offered regarding this defendant. . ." *Burgos-Lopez*, 2026 U.S. Dist. LEXIS 4050, at *4.

The disclosure fails to identify the "pair of propositions" and the "assumed number of contributors" that generated the results. The LR is a mathematical output

dependent on the propositions selected. (172 at 4, STR Processing ¶ 3). The Report acknowledges that "a range of propositions might explain the DNA evidence" and that different propositions could yield different results. (*Id.*) Without knowing the propositions and the NOC determination, the defense cannot evaluate whether the "uninformative" label is valid or whether different parameters would yield exclusion. By withholding these "bases and reasons," the Government has deprived Henley of any meaningful cross-examination. *Burgos-Lopez*, 2026 U.S. Dist. LEXIS 4050, at *14–15.

The Court should exclude the evidence. Alternatively, the Court should order a pretrial *Daubert* hearing at which the Government must produce the specific "pair of propositions" and STRmix run parameters for each item.

## V. THE PROPOSED GANG-PROFILE TESTIMONY IS IRRELEVANT AND INADMISSIBLE.

The Government's disclosure regarding Choe seeks to introduce a sweeping, prejudicial narrative of the Rollin' 60s Neighborhood Crips untethered to the specific "Big U Enterprise" and racketeering acts charged. This testimony—ranging from the "history and origins" of a 1,000-member gang to the gang status of a deceased celebrity—fails Rule 702's "fit" requirement because it does not assist the jury in resolving any fact of consequence. The Government's failure to identify specific communications, principles, or methodology is also fatal.

### A. The Gang Profile Narrative Is Irrelevant to the "Big U Enterprise" and Unfairly Prejudicial.

The Indictment does not allege the Rollin' 60s is the RICO enterprise. Instead, the Government pleaded a specific association-in-fact enterprise—the "Big U Enterprise"—with distinct purposes and methods. Choe will testify extensively about the Rollin' 60s. (Ex 173 at 2–3.) This is irrelevant under Rules 401 and 402 because the internal structure of a 1,000-member gang does not make it more or less probable that Henley committed the specific acts of extortion, fraud, and tax evasion alleged.

Having elected not to charge the Rollin' 60s as the RICO enterprise, the Government cannot use expert testimony to substitute a broader gang identity for its narrower association-in-fact. Rule 702 requires expert testimony "fit" the facts. Testimony about generalized gang culture does not assist the jury in determining the existence of the alleged "Big U Enterprise," and instead risks redefining the enterprise through expert narrative rather than proof.

The prejudice is compounded by Choe testifying regarding the "day-to-day operations" of the Rollin' 60s, including "drug trafficking," "vehicle theft," and "retaliatory shootings." (Ex. 173 at 3.) None of these are alleged racketeering acts. Testimony about territorial warfare and drug distribution does not help the jury determine whether Henley committed SBA loan fraud or tax evasion and any of the 40 other charges the government wove together in its far-reaching indictment. This evidence serves only to invite "guilt by association." *United States v. Moore,* No. 3:20-cr-00474-IM, 2021 U.S. Dist. LEXIS 231874, at *4 (D. Or. Dec. 3, 2021) (citing *United States v. Gomez*, 6 F.4th 992, 1006 (9th Cir. 2021). The Court must exclude this generalized evidence to prevent the trial from devolving into a seminar on the criminality of a group not on trial.

**B. Ermias Joseph Asghedom (Nipsey Hussle) Must Be Excluded.**

Choe will testify that "Nipsey Hussle was a proud member of the Rollin' 60s" and that "Eugene Henley, Jr. was his manager." (Ex. 173 at 2.) This testimony has no place in this trial. The gang status of a deceased celebrity is not an element of any charged offense, nor does it provide necessary background to understand them. Whether Asghedom was a "proud member" has no relevance.

By introducing testimony that Henley "managed" Asghedom, who was later murdered, the Government invites the jury to draw an impermissible inference: that because Henley represented Asghedom, and Asghedom was later killed, Henley must have orchestrated the charged homicide of R.W. That inference is unsupported by evidence and fueled by unsubstantiated allegations. See Justin Tinsley, *How social media*

*and rap podcasts became an invaluable tool for police*, ANDSCAPE (Apr. 17, 2025) https://andscape.com/features/social-media-rap-podcasts-big-u-rico/; Mackenzie Cummings Grady, *Big U Sends A Cease & Desist To No Jumper Over Wack 100's Wild Nipsey Hussle Allegations*, HOTNEWHIPHOP (Mar. 22, 2024) https://www. hotnewhiphop.com/778892-big-u-cease-and-desist-no-jumper-hip-hop-news#google_vignette.

While the Government may suggest Asghedom was murdered because he "disrespected" Mr. Henley, that narrative is inconsistent with the adjudicated record. In *People v. Holder*, the California Court of Appeal noted the fatal confrontation was triggered by a personal dispute over "paperwork"—documentation demonstrating cooperation with law enforcement. *People v. Holder*, 2024 Cal. App. Unpub. LEXIS 7014, at *5–6 (Nov. 5, 2024). There is no mention in the judicial record of any grievance involving Henley as a motivating factor.

Choe also lacks unique knowledge of Asghedom's gang affiliation or death, much less a reliable basis to interpret it. Eric R. Holder Jr. committed the murder and was sentenced to "60 years to life." James Queally, *Eric R. Holder Jr. sentenced to 60 years to life*, L.A. TIMES (Feb. 22, 2023). Allowing this testimony permits the Government to use an expert as a conduit for a propensity theory untethered to the facts.

**C. The Government Has Failed to Establish Choe is Qualified.**

Rule 702(a) requires expertise by "knowledge, skill, experience, training, or education" specifically related to the opinions offered. The Choe Disclosure relies on generalized assertions—"hundreds of contacts," "extensive knowledge," and "daily monitoring"—without detail establishing a reliable basis.

Government provides no quantification of how much time Choe's less than a decade of policing was dedicated specifically to the Rollin' 60s, nor identifies Choe's specific role in the "hundreds of arrests, interviews, and field contacts" it cites. (*Id.*) Geographic assignment to a particular division does not qualify a witness to offer expert testimony regarding the historical development or organizational practices of a

1,000-member gang.

Furthermore, Choe's knowledge is derived from "witnesses, victims, cooperators, former gang members, and confidential informants." (*Id.*) Yet the disclosure identifies no methodology for assessing the reliability of this information, distinguishing street rumor from verified fact, or ensuring consistency across sources. An expert's "experience" must be more than a collection of unverified hearsay-on-hearsay gathered during patrol. Without a showing of how Choe's "contacts" translate into a reliable understanding of the gang's internal operations, the Government has failed to establish the "knowledge" or "experience" required by Rule 702.

### D. Proposed "Slang" Testimony Violates Rule 16, Fails Rule 702, and Improperly Usurps the Jury's Role.

The Government's attempt to have Choe "decode" terms—such as "racks," "lick," "taxing," and "blower"—is procedurally and substantively deficient. The notice fails to provide a complete statement of all opinions and the bases and reasons for them. Instead, it provides only a generic glossary without identifying the specific intercepted calls, texts, or recordings in which these terms allegedly appear. (Ex. 173 at 4.) Without an exhibit-by-exhibit mapping, the defense is deprived of its right to meaningfully challenge the reliability of the expert's application of his purported expertise.

This failure also prevents the Court from performing its gatekeeping function. The disclosure identifies no methodology whatsoever. It relies entirely on Choe's "training and experience," without explaining how those experiences yield reliable, testable, or consistent interpretations. There is no indication whether meanings are fixed or context-dependent, whether they vary by speaker, time, or setting, or whether Choe reviewed the full context of the communications he intends to interpret. Rule 702 requires that expert testimony be "the product of reliable principles and methods" and that those methods be reliably applied to the case. Fed. R. Ev *Id.* 702(c)–(d). Bare "experience" is not methodology.

Finally, much of the proposed testimony is inadmissible because it is not helpful. Expert testimony is unnecessary when the subject matter is within the common knowledge of the average juror or where the meaning of the language is clear from the context of the conversation. See *United States v. Freeman*, 498 F.3d 893, 902 (9th Cir. 2007). Unlike the "coded" language frequently encountered in complex drug distribution conspiracies, the terms listed in the Choe Disclosure are largely matters of common vernacular or are self-explanatory within the context of the recorded communications. For example, the Government seeks to interpret the term "blower." Yet, in the Indictment itself, the Government has already provided the definition: "two blowers (i.e., firearms)." (Indictment Overt Act No. 149.) Where the Government can define a term in its own pleading, and where a jury is capable of understanding the term through context, an expert's "interpretation" serves no purpose.

At bottom, the Government's disclosure does not describe a reliable expert methodology applied to identified evidence. It describes a witness who will review materials, adopt the Government's interpretation, and present it to the jury with the imprimatur of expertise. At a minimum, the Court should conduct an evidentiary hearing requiring the Government to identify each communication at issue, articulate the specific opinion to be offered, and explain Choe's methodology supporting his opinion before any such testimony is admitted.

## VI. CONCLUSION

The government's expert disclosures represent a systemic failure. Not only does it fail to satisfy its disclosure obligations for the vast majority of opinions, it attempts to bypass the jury's role by presenting a pre-packaged narrative under the guise of expertise. Because the government has failed to demonstrate the reliability or necessity of this testimony, the Court should exclude all four experts. In the alternative, the Court should conduct pretrial Daubert hearings, compel supplemental disclosure, and impose the specific limitations set forth in the Argument. To do

otherwise would infringe upon the defendant's Sixth Amendment right to confront the witnesses against him and his Fifth Amendment right to have a jury of his peers—not the government's experts—determine his guilt.

DATED: March 27, 2026

Respectfully submitted,

*/s/ Craig A. Harbaugh*
CRAIG A. HARBAUGH

*/s/ Peter Johnson*
PETER JOHNSON
Attorneys for Eugene Henley, Jr.

*/s/ Scott Pactor*
SCOTT PACTOR
Attorney for Sylvester Robinson

*/s/ Kristen N. Richards*
KRISTEN N. RICHARDS
Attorney for Mark Martin

## DECLARATION OF CRAIG A. HARBAUGH

I, Craig Harbaugh, hereby state and declare as follows:

1. I am an attorney, duly licensed to practice law in the State of California and am admitted to practice in the Central District of California. I am court-appointed to represent Eugene Henley, Jr. in this matter.
2. Attached hereto are true and correct copies of Exhibits 169 to 175.

I declare under penalty of perjury under the laws of the United States and the State of California that the above is true and correct to the best of my knowledge and belief

DATED: March 27, 2026

*/s/ Craig A. Harbaugh*
CRAIG A. HARBAUGH