# EXHIBIT 169

# United States Department of Justice

## United States Attorney's Office
## Central District of California

*Kevin J. Butler / Jena A. MacCabe*
*Phone: (213) 894-6495/5046*
*E-mail: kevin.butler2@usdoj.gov/jena.maccabe@usdoj.gov*

*1300 United States Courthouse*
*312 North Spring Street*
*Los Angeles, California 90012*

March 13, 2026

**VIA E-MAIL**

Craig A. Harbaugh
Harbaugh Law, PC
360 E. 2nd Street, Suite 800
Los Angeles, CA 90012
213-986-8656
Email: craig@harbaugh.law

Peter Johnson
Peter Johnson Law, P.C.
407 North Pacific Coast Highway, 651
Redondo Beach, CA 90277
310-295-1785
Fax: 213-219-2907
Email: peter@peterjohnsonlaw.com

Michael M. Levin
Wegman and Levin APC
4605 Lankershim Boulevard, Suite 650
North Hollywood, CA 91602
818-980-4000
Fax: 818-980-4080
Email: mml@wegmanlevin.com

Carlos L. Juarez
Law Office of Carlos L. Juarez
PO Box 2464
Riverside, CA 92516-2464
951-742-7354
Fax: 951-742-7358
Email: juarezlaw52@yahoo.com

Scott Adam Pactor
Law Offices of Scott Pactor
934 23rd Street
San Diego, CA 92102
619-260-2636
Fax: 619-260-0058
Email: scottpactor@yahoo.com

Kristen Nicole Richards
Anthony M Solis APLC
23679 Calabasas Road Suite 412
Calabasas, CA 91302-1502
310-940-9624
Email: knrichards85@gmail.com

John D. Robertson
Law Offices of John D. Robertson APC
1021 South Union Avenue
Los Angeles, CA 90015
213-482-8893
Fax: 213-482-5002
Email: jdrlaw@hotmail.com

Kenneth A Reed
Law Offices of Kenneth A Reed
406 West 4th Street
Santa Ana, CA 92701
714-953-7400
Fax: 714-953-7412
Email: kenneth@kennethreedlaw.net

Re: United States v. Eugene Henley, et al.,
No. 25-CR-211(A)-FLA

Government's Expert Disclosure re: Communication Detail Record and Geolocation Analysis

Counsel:

Pursuant to the 2022 Amendments to Federal Rule of Criminal Procedure 16(a)(1)(G), this letter constitutes the government's disclosure relating to its intention to call as a witness at trial in the above-captioned matter Kyle Tramonte, who may provide expert or opinion testimony pursuant to Rules 702, 703, and/or 705 of the Federal Rules of Evidence.

The government reserves the right to supplement this letter with additional information about Kyle Tramonte and/or his testimony prior to trial.

## I. Kyle Tramonte Methodology and Findings

At trial, the government intends to call Mr. Tramonte to identify the approximate locations of various cell phones at different times throughout the investigation. Mr. Tramonte will testify regarding the process of identifying the locations of cell phones at certain points in time and interpretations of communication detail records and other records described in the underlying reports, as well as his own trial presentation. Mr. Tramonte's testimony will cover the following topics, among others:

1. How cell phones communicate with cell sites;

2. The types of information created and maintained by cellular service providers;

3. The use of communication detail records and other network records to determine approximate cell phone locations;

4. Cell phone mapping software;

5. The process of peer review with LexisNexis and cell phone geolocation analyses.

Based on this, the government expects, for example, Mr. Tramonte to testify that the current trial defendants', as well as victim R.W.'s, cell phones were in the vicinity of various relevant locations that the government will present at trial. Specifically, the government expects Mr. Tramonte to testify that:

1) On January 23, 2021, two cellular telephones associated with Defendant Eugene Henley (telephone numbers 323-251-9267 and 323-893-3652) left the general area of South Los Angeles, California, between approximately 2:30 PM and 3:00 PM, and traveled to the general vicinity of 4311 East Oquendo Road, Las Vegas, Nevada, arriving in that area at approximately 7:00 PM on January 23, 2021. The

specific address of 4311 East Oquendo Road is provided here only as a point of reference, not an exact location where the cell phones' precise positions could be determined based on historic cellular records alone.

2) Both of Defendant Henley's cell phones remained in that general area until there was evidence of obvious movement of the -9267 device away from the vicinity of East Oquendo Road and into the general area of 5711 Roundrock Drive, Las Vegas, Nevada, appearing in the area of Roundrock Drive at approximately 3:15 AM on January 24, 2021. The specific address of 5711 Roundrock Drive is provided here only as a point of reference, not an exact location where the cell phone's precise position could be determined based on historic cellular records alone.

3) Defendant Henley's cell phone -9267 then returned back to the same general area of East Oquendo Road, Las Vegas, Nevada, arriving back in this vicinity at approximately 3:30 AM on January 24, 2021.

4) During the time period where the -9267 device traveled from the area of East Oquendo Road to the area of Roundrock Drive, there was a complete absence of billing activity (phone calls, SMS text messages, data sessions) and engineering data (historic precision location information) providing cell site location information for telephone number -3652 associated to Defendant Henley. This prevented Mr. Tramonte from ascertaining or opining about the general whereabouts of that cell phone between approximately 1:45 AM and approximately 3:40 AM on January 24, 2021.

5) Both phones appeared to stop communicating with the AT&T network at nearly the exact same time on January 25, 2021. The last network communication for the -9267 device on January 25, 2021, was at 12:58 AM, which included a tower hand-over for a data session, as well as a network estimated location in the same minute (12:58 AM). Both the tower sector and the network estimated location are consistent with the device being in the area of East Oquendo Road at that time (12:58 AM).

6) Similarly, Defendant Henley's phone records for the -3652 device indicated a stop in network communication also at 12:58 AM, which included the last connection using the same sector of the same tower as the last connection for the -9267 device when it too ceased communicating with the network. The -3652 device also provided a network estimated location in the same vicinity as the -9267 device at 12:58 AM, suggesting both the -9267 and the -3652 devices were in the vicinity of each other at 12:58 AM.

7) Based on Mr. Tramonte's examination of both phone records, it appears as though both of Defendant Henley's cell phones stopped communicating with the AT&T

network within the same minute.

8) The -9267 device did not re-establish a connection to the network until 2:15 AM on January 25, 2021, which was provided in the form of a network estimated location. This estimated location placed the device in the general vicinity of Interstate 11 and East Charleston Boulevard in Las Vegas, Nevada. The placement of this network estimated location is approximately 5.3 miles from 4311 East Oquendo Road, and based on the location's estimated accuracy value (600 meters), it is inconsistent with being in the same general area (East Oquendo Road) as when it ceased communicating with the network at approximately 12:58 AM.

9) As time proceeded in the network estimated location report, it became obvious the device was in a pattern of traveling south from the area of Interstate 11 and East Charleston Boulevard. As this pattern continued, the -9267 device arrived back in the general vicinity of East Oquendo Road at approximately 2:35 AM on January 25, 2021.

10) The -3652 device did not resume communication with the AT&T network until 4:54 AM on January 25, 2021, in the form of a network estimated location. This location is consistent with being in the same general vicinity of East Oquendo Road, generally in the same area as when this device stopped communicating with the network at 12:58 AM.

11) Both Defendant Henley's cell phones generally remained in the greater Las Vegas area until approximately 9:45 AM on January 25, 2021, when they both then traveled generally together to the vicinity of Primm, Nevada, and from there, back to the area of South Los Angeles, California, the same day.

12) During this same general time frame, a cellular telephone associated with Defendant Sylvester Robinson (telephone number 213-440-1155) showed evidence of being in the same general area of 4311 East Oquendo Road, Las Vegas, Nevada, between approximately 1:10 AM on January 24, 2021, and approximately 5:11 AM on January 25, 2021. During this time period, the device had little evidence of significant movement or travel, remaining mostly connected to the same cell site as Defendant Henley's two cell phones while in the area of East Oquendo Road.

13) Mr. Tramonte further received a "CDR Mediations" report from the government for telephone number 747-264-8117, generated by T-Mobile, and purportedly belonging to the deceased victim in this case.

14) After examining and interpreting the CDR data contained in this Mediations report, Mr. Tramonte concluded that out of the total of 83 lines of communication activity, only 28 contained cell site location information. During the relevant time

period of January 22 through January 24, 2021, T-Mobile recorded a total of nine communication activities that contain cell site location information.

15) Between January 22 at 11:38 PM and January 24 at 3:05 PM, T-Mobile recorded eight communication activities for the -8117 device, being a mixture of incoming and outgoing phone calls. All eight of these network connections recorded a tower and sector consistent with being in the vicinity of 5711 Roundrock Drive. As noted previously in this disclosure, the specific address of 5711 Roundrock Drive is provided here only as a point of reference, not an exact location where the cell phone's precise position could be determined based on historic cellular records alone.

16) The last communication activity recorded by T-Mobile for the -8117 device was an outgoing phone call from the -8117 device on January 24, 2021, at 11:41 PM, using a tower and sector consistent with being in the general area of 4311 East Oquendo Road.

17) Of particular interest is the fact that communication records with location information exist for the -9267 device suggesting that this device was also in the vicinity of East Oquendo Road within the same general time frame as the victim's -8117 device. In the time period surrounding the 11:41 PM phone call from the -8117 device, the -8117 and the -9267 devices were actively connecting to the same cell tower near East Oquendo Road.

18) Regarding the -3652 device, although no actual user communication activity was recorded during the one-hour time frame surrounding the -8117 device's last phone call, engineering data in the form of network estimated locations do exist, suggesting the -3652 device was also in the general area of East Oquendo Road in the same time period as the -8117 and the -9267 devices around the time of -8117's last phone call.

19) Regarding the time period of January 6, 2023, through March 28, 2023, Mr. Tramonte examined archived real-time location pings of Defendant Henley's cell phone ending in -9267. Based on this examination, Mr. Tramonte concluded the following –

a. From the time period of the evening of January 6, 2023, through the morning of January 20, 2023, the -9267 device remained in the overnight hours at or near the Henley residence located at 4159 West 62nd Street, Los Angeles, California. For the purpose of this examination, Mr. Tramonte defines "overnight hours" as 11:00 PM to 8:00 AM on any given night where location information is available.

b. From the time period of the evening of January 20, 2023, through the morning of February 6, 2023, there was no available location information.

c. From the time period of the evening of February 6, 2023, through the morning of February 14, 2023, the -9267 device remained in the overnight hours at or near the Henley residence on West 62nd Street.

d. From the time period of the evening of February 14, 2023, through the morning of February 15, 2023, the -9267 device was located in the overnight hours in the general area southwest of Interstate 105 and Interstate 110. The pattern and associated margins of error for the real-time location pings on this evening are inconsistent with being at or near the Henley Residence on West 62nd Street.

e. From the time period of evening of February 15, 2023, to the morning of February 17, 2023, the -9267 device remained in the overnight hours in the general area of Beverly Hills / West Hollywood.

f. From the time period of the evening of February 17, 2023, through the morning of February 18, 2023, the -9267 device exhibited a pattern of travel from Southern California toward Las Vegas, Nevada.

g. From the time period of the evening of February 18, 2023, to the morning of February 20, 2023, the -9267 remained during the overnight hours in Las Vegas, Nevada.

h. From the time period of the evening of February 20, 2023, through the morning of March 4, 2023, the -9267 device remained during the overnight hours at or near the Henley Residence on West 62nd Street; however, toward the end of the morning hours of March 4, 2023, the device exhibited evidence of movement to Las Vegas, Nevada.

i. From the time period of the evening of March 4, 2023, through the morning of March 5, 2023, the -9267 device remained during the overnight hours in the area of Las Vegas, Nevada.

j. From the time period of the evening of March 5, 2023, through the morning of March 6, 2023, the -9267 device exhibited a pattern of travel from the area of Las Vegas, Nevada, back to Southern California.

k. From the time period of the evening of March 6, 2023, through the morning of March 7, 2023, the -9267 device remained during the overnight hours at or near the Henley residence on West 62nd Street.

20) Mr. Tramonte further examined network engineering records (with cell site location information) in the form of Timing Advance data and network estimated locations for both of Defendant Henley's cell phones (-3652 and -9267) for the period of March 13, 2025, through March 18, 2025. Mr. Tramonte was made

aware that Defendant Henley was to be arrested by the Los Angeles Police Department on March 19, 2025, sometime between 5:00 AM and 6:00 AM, and Mr. Tramonte was asked to provide his opinions and conclusions, if any, as to the network activity of both devices in the hours leading up to the arrest.

21) Mr. Tramonte was provided with historic cellular records of the aforementioned type produced pursuant to a search warrant ordering disclosure of said records from March 13, 2025, through March 20, 2025 for both the -3652 and the -9267 devices.

22) For the -9267 device, the last communication between the handset and the network occurred at 11:34 PM on March 18, 2025, in the form of a network estimated location, which suggested the -9267 device was in the general area of Western Avenue and West Gage Avenue in Los Angeles. Although the time span of records ordered by legal demand extended to March 20, actual network communication ceased on the evening of March 18.

23) As for the -3652 device, the last communication between the handset and the network occurred at 11:34 PM on March 18, 2025, in the form of a network estimated location, which suggested the -3652 device was in the general area of Western Avenue and West Gage Avenue in Los Angeles, same as the -9267 device. Although the time span of records ordered by legal demand extended to March 20, actual network communication ceased on the evening of March 18.

24) Both the -3652 and the -9267 devices ceased communicating with the AT&T network in the same minute on the same day and in the same general location, suggesting both devices were in the same area at the time they ceased communicating with the network.

25) Location patterns between both devices from March 13, 2025, through March 18, 2025, suggest both devices remained generally together throughout that span of time. At no time during this six-day period did Mr. Tramonte observe any significant deviation or variation between the locations of the two devices, suggesting they remained generally together throughout these six days.

## II. <u>Notice Pursuant to Fed. Rule Evid. 1006</u>

Because the illustrations and animations within Mr. Tramonte’s report summarize the underlying records, the government hereby gives notice of its intent to use the illustrations as summaries of the records pursuant to Federal Rule of Evidence 1006.

**III. Notice Pursuant to Fed. Rule Evid. 902(11)**

The government intends to introduce the records underlying these opinions pursuant to Federal Rule of Evidence 902(11).

**IV. Qualifications, Bases, and Reasons for Findings**

Mr. Tramonte's qualifications are described in his curriculum vitae, which is attached hereto. List of Prior Expert Testimony:

Since 2022, Mr. Tramonte has testified, has been qualified, has been identified, and / or otherwise has been disclosed as an expert witness in mobile device geolocation in the following courts[1]:

[1] Fed. R. Crim. P. 16(a)(1)(G)(iii) requires the disclosure of a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

1. Ninth Judicial Circuit of Florida (Orange County), Case No. 48-2024-CF-016631, State v. Willie Hull

2. Eleventh Judicial Circuit of Florida (Miami-Dade County), Case No. 13-2023-CF-010981, State v. Anthony DeFillipo

3. Eleventh Judicial Circuit Court of Florida (Miami-Dade County), Case No. F23014094A, State v. Edward Lee Pinkey

4. Eleventh Judicial Circuit Court of Florida (Miami-Dade County), Case No. F2218589, State v. Morris Henderson

5. Sussex County Superior Court of New Jersey, Case No. SSX-21-000027, State v. Jamaal Melish & Aiken Hanan

6. Worcester County Superior Court of Massachusetts, Case No. 2085CR00181, Commonwealth v. Jacob Grice

7. Essex County Superior Court of Massachusetts, Case No. 2277CR00248, Commonwealth v. Dennis Ortiz

8. Fifth Judicial District of Idaho (Twin Falls County), Case No. CR42-24-7906, State v. Landon Sielaff (grand jury proceeding)

9. Solano County Superior Court of California, Case No. F24–2154, State v. Omar Molina

10. Supreme Judicial Court of Massachusetts (Suffolk County), Case No. 1784CR00067, Commonwealth v. Jamari Manning

## V. **Approval**

Consistent with Rule 16(a)(1)(G)(v), Mr. Tramonte's signature below signifies that he has reviewed the above disclosure and approves of its contents.

KYLE TRAMONTE
Lead Investigative Consultant, Geolocation Investigations Team – Special Investigations Unit
LexisNexis Risk Solutions

Please contact us if you believe that the notice that you have received provides inadequate notice under Rule 16(a)(1)(G). The government also reserves the right, and intends to, supplement this expert notice in advance of trial.

In addition, pursuant to Fed. R. Crim. P. 16(b)(1)(C), the government hereby again request reciprocal disclosure from the defense of any testimony defendant intends to use at trial under Fed. R. Evid. 702, 703, and/or 705 as well as all reciprocal discovery to which the government is entitled under Rules 16(b) and 26.2 of the Federal Rules of Criminal Procedure.

Please let me know if you have any questions or would like to further discuss any of the matters raised above.

Very truly yours,

KEVIN J. BUTLER
Assistant United States Attorney